[Civ. No. 31281. Second Dist., Div. Two. Mar. 12, 1968.]

Adoption of LAURA ANN BONNER, a Minor. HARRY PAUL BONNER et al., Plaintiffs and Appellants, v. MILDRED BONNER, Defendant and Respondent.

James R. Pino for Plaintiffs and Appellants.

Virgina Allen for Defendant and Respondent.

KATZ, J. pro tem.*—Harry and Betty Bonner, husband and wife, filed a petition to adopt Laura Ann Bonner, a minor. They alleged that Madeline Zellman was the natural mother of the child, that she had abandoned the child, and that her whereabouts were unknown. Pursuant to section 226.6 of the Civil Code, the Los Angeles County Bureau of Adoptions made an investigation and submitted its report and recommendation to the court below. That report is the source of facts hereafter recited.

According to petitioner Harry Bonner, while he was married to his former wife, Mildred Bonner, the objector herein, he learned from a fellow employee that Madeline Zellman was looking for a home for her unborn child. He arranged for her to live with his sister during her pregnancy. When Madeline entered the hospital for delivery, she registered under the name of Mildred, and, upon birth of the child, gave Harry's name as the father. The ages of the parents thus listed on the child's birth certificate did not correspond to Mildred's or Harry's age. Neither Harry nor Mildred were the natural parents, and Mildred was unable to have children. On leaving the hospital, Madeline gave the child to Harry. The facts concerning the placement of the infant in the home of Mildred and Harry in 1960 were corroborated by his sister.

Harry and Mildred were divorced in 1962. Mildred's divorce complaint alleged that the child Laura was the issue of the marriage, and prayed for custody and child support. Although properly served, Harry did not file an answer or appear in the divorce action. Mildred and Harry executed a property settlement agreement wherein it was acknowledged that Laura was the issue of their marriage, and provision was made for her custody with Mildred as well as for her support by Harry. The agreement was approved by the court in the divorce action and was the basis for provisions in the interlocutory decree declaring that the child was the issue of the marriage of the parties, awarding custody to Mildred, and requiring Harry to make payments for her support. During the divorce proceedings and at the time the property settlement was executed, Mildred was represented by counsel but Harry was not. The court was not apprised that Mildred and Harry were not the natural parents of the child.

On July 8, 1965, Harry obtained modification of the divorce decree to permit him to have physical possession of Laura during the month of August. The child was sent from Wis-

*Assigned by the Chairman of the Judicial Council.

consin,· where· ·Mildred resided, to Harry's home· in .Los Angeles on July 24, 1965, and the adoption petition was filed on July 27, 1965.

Since the child's birth certificate named Mildred as the mother, the Bureau of Adoptions requested Wisconsin authorities to interview Mildred to ascertain if she would sign an affidavit acknowledging she was not Laura's natural mother and admitting the truth of Harry's statements regarding falsification of the birth certificate. Upon being informed that Mildred would not sign such an affidavit and would not consent to the adoption, the bureau recommended to the court that the petition for adoption be denied because the presumed natural mother would not consent thereto.

At the hearing on the bureau's report and recommendation, the petitioners and objector stipulated that the question whether Mildred's consent was required for the adoption would be submitted to the trial court on points and authorities. Thereafter, the court signed findings of fact and conclusions of law reflecting its determination that the adjudication in the divorce action to the effect that Mildred and Harry were the parents of the child was binding upon them, and, therefore, the minor could not be adopted without Mildred's consent. Judgment was entered denying the petition for adoption.

On appeal, petitioners urge as ground for reversal of the judgment that the trial court erred in holding that the consent of the objector Mildred was necessary, and in denying the adoption because her consent could not be obtained. We have concluded that the trial court's ruling was correct.

■ The judgment in the divorce action between petitioner Harry Bonner and objector Mildred Bonner adjudicated as between themselves the parental relationship of those parties to the child Laura, and under the doctrine of collateral estoppel that adjudication is binding upon both parties to the divorce. (*Adamson* v. *Adamson*, 209 Cal.App.2d 492 [26 Cal. Rptr. 236]; *Garcia* v. *Garcia*, 148 Cal.App.2d 147 [306 P.2d 80].) Neither Harry nor Mildred Bonner can relitigate the question of Laura's parentage, and Harry is estopped to show in this proceeding that Mildred is not the child's natural mother. ■ Since Harry is thus estopped and since it appears from the birth certificate that Mildred is Laura's mother,· her consent is required for adoption of the child. (Civ. Code, § 224.)

■ Petitioners contend that the court in the divorce

action had no jurisdiction over the minor child and that any order or reference to the child in the interlocutory decree of divorce is void. It is well established, however, that a court in a divorce action has jurisdiction to determine as between the parties the parentage of children and to provide for their custody and support. (*Adamson* v. *Adamson, supra*; *Madden* v. *Madden*, 160 Cal.App.2d 422 [325 P.2d 538]; *McKee* v. *McKee*, 156 Cal.App.2d 764 [320 P.2d 510].) Nevertheless, petitioners argue that the court's authority in this regard is limited by section 138 of the Civil Code to "children of the marriage," and that in the Bonner divorce the court exceeded its jurisdiction because Laura was not in fact a child of the marriage of Harry and Mildred. The argument seeks to equate error in the exercise of jurisdiction with an act in excess of jurisdiction, and the authorities support the conclusion that the court in the divorce action did not exceed its jurisdiction in determining that Laura was an issue of the marriage between Harry and Mildred. (*Garcia* v. *Garcia, supra*; *Heathman* v. *Vant*, 172 Cal.App.2d 639 [343 P.2d 104]; *Estate of Estrem*, 16 Cal.2d 563 [107 P.2d 36]; see *Adamson* v. *Adamson*, 209 Cal.App.2d 492 [26 Cal.Rptr. 236].) In *Garcia* v. *Garcia, supra*, it was held that an interlocutory decree of divorce which approved and incorporated by reference a property settlement agreement wherein the parties agreed there was a child of the marriage determined the issue of parentage, and that the doctrine of res judicata precluded the husband from thereafter maintaining an action against the wife and child to have it declared that there was no paternity relationship. In *Heathman* v. *Vant, supra*, it was held that a husband against whom a default divorce had been granted could not set aside the divorce on the ground that the court lacked jurisdiction because the wife had not been a resident of the state for one year before she filed her divorce complaint. The rationale of the rule is stated by the Supreme Court in *Estate of Estrem, supra*, at page 570, as follows: "The jurisdiction of the court to render a judgment or order often depends upon the preliminary determination of certain jurisdictional facts. When all parties affected are actually or constructively before it with an opportunity to assert their contentions and to appeal from an adverse ruling, the finding of such facts by the court may be reviewed only by an appeal or other timely and available direct attack. This finding cannot be attacked . . . in any collateral proceeding. In such situations the finding is as conclusive as any other finding of fact by the court in the original proceeding."

Petitioners also contend that Mildred's failure to disclose the true facts concerning the child's birth to the court in the divorce action constituted extrinsic fraud or mistake, and subjects the divorce decree to collateral attack.

But the rule is well settled that neither false allegations in pleadings, perjured testimony, nor concealment of evidence at a trial constitute extrinsic fraud or mistake. (*Gale* v. *Witt,* 31 Cal.2d 362, 365-366 [188 P.2d 755] ; *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105] ; *Horton* v. *Horton,* 18 Cal.2d 579, 584-585 [116 P.2d 605] ; *Heathman* v. *Vant,* 172 Cal.App.2d 639 [343 P.2d 104] ; *Dandini* v. *Dandini,* 146 Cal.App.2d 193, 197 [303 P.2d 556].) Extrinsic fraud is defined and the governing rule is stated in *Westphal* v. *Westphal, supra,* at page 397, as follows: ''Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court. [Citations.] If an unsuccessful party to an action has been kept in ignorance thereof [citations] or has been prevented from fully participating therein [citation], there has been no true adversary proceeding, and the judgment is open to attack at any time. A party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. [Citations.] Fraud perpetrated under such circumstances is intrinsic, even though the unsuccessful party does not avail himself of his opportunity to appear before the court. Having had an opportunity to protect his interest, he cannot attack the judgment once the time has elapsed for appeal or other direct attack. [Citations.]'' In the divorce, Harry was not deprived of the opportunity to present his case and to litigate the question of Laura's parentage. He was aware of Mildred's action, of the allegation in her complaint with reference to the child's parentage, and of the facts relative to the child's alleged true parentage. He was in no manner prevented from participating in the divorce action but chose not to do so. The fact that he was not represented by counsel is not attributable to any fraud or imposition practiced upon him by Mildred nor of any other circumstance suggestive of extrinsic fraud or mistake. Petitioners' reliance on *Babbitt* v. *Babbitt,* 44 Cal.2d 289 [282 P.2d 1], is misplaced. That case holds that a judgment may be collaterally attacked for extrinsic fraud, but it does not support that proposition that concealment of facts from the court, as distinguished from concealment from a party ''collateral to

and outside of court'' (*Gale* v. *Witt, supra,* at page 365), constitutes extrinsic fraud.

 Citing *Adoption of Stroope,* 232 Cal.App.2d 581 [43 Cal.Rptr. 40], petitioners further contend that Mildred's consent to the adoption was not required because the former adjudication that she is Laura's mother is not binding upon the child. However, the child in the present case is not a party to the proceeding to determine her availability for adoption in the same manner or to the same extent as the child involved in the cited case. In *Stroope,* which was a step-parent adoption, the child sought a determination of the nonexistence of paternity under section 231 of the Civil Code. On the other hand, the child in the present case seeks no such determination.

There is no merit in the contention that by applying the doctrine of collateral estoppel the trial court ''in essence, effected an adoption by the divorce.'' The trial court held, in conformance with settled authority, that the male petitioner who had full opportunity to litigate the parentage of the child Laura but who chose instead to admit that she was his child and the child of his former wife by executing a property settlement agreement so stating and by allowing his default to be entered in divorce proceedings wherein it was so alleged, cannot years later in an adoption proceeding commenced by him establish the illegitimacy of that child whatever his motive may be. It might be more accurate to say that by applying the doctrine of collateral estoppel the trial court ''in essence'' refused to countenance an attempt by petitioners to flout the custody award of the divorce court and to circumvent its continuing jurisdiction over custody of the child by initiating the present adoption proceeding. There is no little irony in the fact that the male petitioner invoked the jurisdiction of that court over Laura's custody in order to obtain her physical presence in California, without which the present proceeding could not have been entertained.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.