[Civ. No. 5486. Fifth Dist. July 22, 1980.]

ROXANNA MARIE PERRY, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
FREDERICK LEE PERRY, Real Party in Interest.

**COUNSEL**

Young, Wooldridge, Paulden & Self and Michael R. Young for Petitioner.

No appearance for Respondent.

Richard M. Long for Real Party in Interest.

**OPINION**

**BROWN (G. A.), P.** ■ The issue in this case is whether in a marital dissolution action the superior court has jurisdiction to award visitation privileges to a spouse who is not a parent (natural or adoptive) of a minor child of the other spouse. We hold that it does not because Civil Code section 4351 expressly limits the jurisdiction of the superior court in a marital dissolution action to minors who are "children of the marriage."[1] We arrive at this conclusion notwithstanding the provisions of Civil Code section 4601 which states in pertinent part: "In the discretion of the court, reasonable visitation rights may be granted to any other person having an interest in the welfare of the

---

[1] Civil Code section 4351 provides: "In proceedings under this part, the superior court has jurisdiction to inquire into and render such judgments and make such orders as are appropriate concerning the status of the marriage, the custody and support of minor children of the marriage, the support of either party, the settlement of the property rights of the parties and the award of attorneys' fees and costs; provided, however, no such order or judgment shall be enforceable against an employee pension benefit plan unless the plan has been joined as a party to the proceeding."

child."[2] We construe the latter section to permit the court to award reasonable visitation rights to a nonparent only if in the proceeding before it the court otherwise has jurisdiction over the issue of custody.

## FACTS

Frederick Lee Perry (Husband) and Roxanna Marie Perry (Wife) were married on March 31, 1973. Approximately six years later, on May 7, 1979, Wife filed a petition for dissolution of the marriage. The interlocutory decree of dissolution was entered on June 8, 1979, and the final decree of dissolution on November 20, 1979.

Wife is the mother of Lonnie Yale Langworthy, whose father is her former husband.[3] Lonnie was born approximately nine months before Wife's marriage to Husband. He was approximately seven years old at the time of these proceedings.

The interlocutory decree distributed the community property in accordance with a stipulation of the parties. It was silent as to the custody of or visitation with Lonnie. Husband and Wife's stipulation provided that there were no minor children of the marriage. No contention has been made to the contrary, nor has any contention been made that Husband adopted Lonnie.

Pursuant to an order to show cause issued upon the petition of the Husband seeking visitation with Lonnie, the court order defined visitation rights with the minor and ordered a probation study on the suitability of the Husband to exercise visitation with Lonnie. The probation report was favorable to Husband.

Wife challenged the jurisdiction of the court to award visitation to Husband by a motion to dismiss the order to show cause. In denying the motion the trial court noted: "COURT ORDERS: Petitioner's Motion to Dismiss O.S.C. re: Visitation upon the ground that the Court lacks jurisdiction to entertain said cause is Denied.

"MEMO: The issue presented seems to be one of first impression. Neither side has offered authority that is directly in point.

---

[2]Civil Code section 4601 provides: "Reasonable visitation rights shall be awarded to a parent unless it is shown that such visitation would be detrimental to the best interests of the child. In the discretion of the court, reasonable visitation rights may be granted to any other person having an interest in the welfare of the child."

[3]Lonnie's natural father died soon after he and Lonnie's mother separated.

"There is a prima facie showing that the respondent has filled the role of father in every respect most of the child's life. The fact that there is no 'blood relationship' seems inconsequential, logically speaking, when viewing the ultimate issue which concerns the best interest of the child. Of course, the extent and frequency of said visitation or whether any order should be made depends upon the evidence presented at the hearing (including the Probation Officer's Report) and what is determined to be in the best interest of the minor."

Wife filed with this court the instant petition for writ of prohibition.

### DISCUSSION

Preliminarily we note something that may be self-evident: visitation rights, while not equivalent to full custody (see *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 858 [146 Cal.Rptr. 26]), is a limited form of custody during the time the visitation rights are being exercised. Thus, Civil Code section 5151, subdivision (2), which is part of the Uniform Child Custody Jurisdiction Act (Civ. Code, §§ 5150-5174), recognizes that a "custody determination" includes a court decision regarding visitation rights. That section provides in pertinent part: "As used in this title:

".  .   .   .   .   .   .   .   .   .   .   .   .   .

"(2) 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights;..."

It also must be recognized that a marital dissolution proceeding is only one of a number of proceedings in which custody and visitation rights can be litigated. In *In re B. G.* (1974) 11 Cal.3d 679, 696 [114 Cal.Rptr. 444, 523 P.2d 244], the court observed: "In fact, California has at least eight separate proceedings in which custody questions can be litigated," citing Bodenheimer, *The Multiplicity of Child Custody Proceedings—Problems of California Law* (1971) 23 Stan.L.Rev. 703, 704-705.[4]

---

[4]In the cited Stanford Law Review article the author notes: "Although the Family Law Act makes some effort to unify the guiding principles applicable to these proceedings, California continues to have three major bodies of law concerned with the child-custody decision: the law of guardianship of the person, the law of juvenile dependency, and what may be termed general custody law, applied most frequently in

There can be no doubt that if the issue of custody or visitation is properly before the court in one of these proceedings the court has the authority to award custody or visitation to a nonparent pursuant to Civil Code sections 4600 and 4601. Moreover, the standards set forth in Civil Code section 4600 for determining who should receive custody govern all proceedings. (*In re B. G., supra*, 11 Cal.3d at p. 695; *In re Reyna* (1976) 55 Cal.App.3d 288, 296-297 [126 Cal.Rptr. 138].)

The plain fact, however, is that in a marital dissolution proceeding the legislative grant of authority to the court to deal with custody or visitation matters is constricted by Civil Code section 4351 to the "minor children of the marriage." It follows that the court in such a proceeding is limited in regard to visitation orders in the same way as it is limited to adjudicating the rights of the parties in marital property (see *Porter* v. *Superior Court* (1977) 73 Cal.App.3d 793, 803-805 [141 Cal.Rptr. 59]) and to ordering parents to pay child support (see *Clevenger* v. *Clevenger* (1961) 189 Cal.App.2d 658, 665-666, 672-676 [11 Cal.Rptr. 707, 90 A.L.R.2d 569].)

If the rule were otherwise, then in a dissolution proceeding between "A" and "B" visitation rights to a child of "C" and "D" could be litigated simply because, during the marriage of "A" and "B," "A" was like a father to the child and he could prove that it was beneficial to the child that he be awarded custody or visitation. That would be attempting to litigate the status of a child not before the court and, of course, would be absurd. Conceptually, however, the situation does not differ from that before us.

*In re Marriage of Valle* (1975) 53 Cal.App.3d 837 [126 Cal.Rptr. 38] inferentially supports our conclusion. There the father asserted the court had no jurisdiction to award custody or impose support obligations because the minor children involved were not "children of the marriage." In fact, the natural parents of the children involved were the husband's brother and sister-in-law. The appellate court noted that pur-

---

marriage dissolution proceedings. Each of these areas of law is governed by a separate set of statutory provisions, and each is administered in a different department of the superior courts. In addition to these major actions, there are several other custody remedies, including a special cause of action for exclusive custody without marriage dissolution, suits in equity to determine custody, proceedings to terminate parental rights, adoption proceedings, and habeas corpus actions. Combining all of these approaches, there are at least eight different legal remedies in California that focus on the same question: Where and with whom should a child live when something has occurred to disrupt family unity or balance?" (Fns. omitted.)

suant to the authority to determine the parentage of a child the trial court had found the father/husband was estopped from denying his parenthood.[5] They affirmed that factual decision. The court cited *Clevenger* v. *Clevenger, supra,* 189 Cal.App.2d 658, for the proposition that a court may order support payments from a person estopped to deny parentage. The court concluded that if that were so, estoppel to deny parenthood would also allow a court to have jurisdiction to award custody because the child would then, through a legal/factual conclusion, be a child of the marriage. (*In re Marriage of Valle, supra,* 53 Cal.App.3d at p. 842.) By necessary implication the court held that courts have no jurisdiction to award custody or support if the child is not "of the marriage." (*Id.,* at pp. 842-843; cf., *Adoption of Bonner* (1968) 260 Cal.App.2d 17 [66 Cal.Rptr. 812].)

From what has been said, it follows that had Lonnie been a child of the marriage between Husband and Wife, then under the provisions of Civil Code section 4601 the court upon proper petition could have determined visitation rights of an uncle, grandparent, surrogate father, or "any other person having an interest of the welfare of the child." (See *In re Marriage of Meier* (1975) 51 Cal.App.3d 120, 123 and fn. 3 [123 Cal.Rptr. 822]; Cal. Rules of Court, rule 1252(b).)

We do not find the result in this case particularly palatable. However, in view of the language in the relevant code sections, we feel compelled to hold the trial court had no jurisdiction to make any order concerning visitation in the proceeding before it. We are aware that in this modern society there are probably a considerable number of stepparents and stepchildren in situations substantially similar to that before us. The Legislature has the power to address this thorny problem of visitation by stepparents. We, on the other hand, cannot rewrite Civil Code section 4351 by a strained interpretation of the phrase "minor children of the marriage" merely because one mother has made a decision which the trial court and probation department have determined is contrary to the child's best interest.

Let a writ of prohibition issue prohibiting the trial court from enforcing paragraph 1 of its order on order to show cause dated August 6,

---

[5] No contention has been made herein that Husband is estopped from denying his parentage. In fact, Wife asserts Husband is estopped from asserting parentage. However, the record does not contain enough facts to make any determination on estoppel to assert or deny parentage. We do note though that if Husband were asserting parentage the contention would be contrary to the stipulation of the parties and Husband's responsive pleading to the order to show cause.

1979, entered August 7, 1979, ordering visitation privileges to Frederick Lee Perry with the minor child, Lonnie Yale Langworthy, and from taking any further action with respect thereto except to discharge the order to show cause seeking said visitation privileges.

Zenovich, J., concurred.

**HOPPER, J.**—I concur but believe an additional comment is in order.

If husband had asserted in his response to the petition in the dissolution action that there were children of the marriage because he stood *in loco parentis* with regard to Lonnie, the superior court might have jurisdiction over the subject matter. In other words, if husband had raised the issue and had been found by the superior court to be *in loco parentis* with regard to Lonnie, one could conclude that Lonnie was a "child of the marriage" within Civil Code section 4351 (see *Gribble v. Gribble* (Utah 1978) 583 P.2d 64;[1] *Spells v. Spells* (1977) 250 Pa.Super. 168 [378 A.2d 879]; cf. *In re Marriage of Valle* (1975) 53 Cal.App.3d 837 [126 Cal.Rptr. 38]; on the general subject of steparents see 59 Am. Jur.2d, Parent and Child, § 91, pp. 187-190; see also Annot. (1964) 98 A.L.R.2d 325, on visitation rights of persons other than parents).

However, husband did not allege he stands *in loco parentis* with regard to Lonnie and the issue of whether a finding in his favor on that question would make Lonnie a child of the marriage under Civil Code section 4351 for the purposes of visitation has not been briefed or argued. Therefore it would not be proper to determine such issue at this time.

The trial court was obviously impressed by the close relationship which had developed over the years between Lonnie and his stepfather. That court also determined that visitation by the stepfather was in the best interests of the child. Therefore, it is with reluctance and solely under the compulsion of Civil Code section 4351 as now written, I agree the writ should issue.

The petition of real party in interest for a hearing by the Supreme Court was denied November 4, 1980. Tobriner, J., and Newman, J., were of the opinion that the petition should be granted.

---

[1]*Gribble v. Gribble, supra,* holds that a stepparent has a right to a hearing to determine if the stepparent stands *in loco parentis* with regard to the stepchild and that if an affirmative finding is made, that the stepparent should have the same rights and responsibilities as a natural parent and should be deemed a parent under the Utah statute governing visitation (583 P.2d at p. 68).