[Civ. No. 69194. Second Dist., Div. Seven. Jan. 4, 1984.]

MARC WILFRIED MARCKWARDT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERT MICHAEL SOTO, Real Party in Interest.

COUNSEL

Joan Tremblay Gordon for Petitioner.

No appearance for Respondent.

Thomas S. Powers and Harold J. Cohn for Real Party in Interest.

## OPINION

SCHAUER, P. J.—We must determine whether the Legislature, in recently extending the jurisdiction of the family court to grant a spouse visitation rights to "a minor child of the other [spouse]" (Civ. Code, § 4351.5), empowered the court to award a natural father visitation of his children after their adoption by his former wife's new husband.

### FACTS[1]

Real party in interest Robert Soto (Soto) is the natural father of Kimberly Marckwardt and Melodie Marckwardt, ages seven and eight respectively. Their mother, Linda Marckwardt, obtained a decree of marital dissolution from Soto in 1981. The interlocutory decree awarded custody of the minor children to Linda Marckwardt. She thereafter married Marc Wilfried Marckwardt (Marckwardt), petitioner here.

Marckwardt then commenced proceedings for stepparent adoption of the children. In May of 1982, Soto executed two consents to this adoption, one for each child. (See Civ. Code, § 226.9.) Each consent recited that Soto was giving consent to adoption of his child by Marckwardt, "it being fully understood by me that with the signing of this document my consent may not be withdrawn except with court approval, and that with the signing of the order of adoption by the court, I shall give up all my rights of custody, services, and earnings of said child, and that said child cannot be reclaimed by me." Upon the filing of these consents and other attendant proceedings, Marckwardt's adoption petition was granted.

Soto thereafter filed a "petition to withdraw consent," seeking to set aside the adoption decree. The superior court denied this petition without prejudice to proceedings under Civil Code section 227d. Soto did not so proceed. Instead, on March 28, 1983, he obtained an "order to show cause re stepparent visitation" in the dissolution action. Asserting that although no long-

---

[1]The facts recited herein, to the extent not alleged in the petition for writ of prohibition, are disclosed by the superior court's records of the dissolution and adoption proceedings, of which we have taken judicial notice with the consent of the parties (Evid. Code, §§ 452, subd. (d), 459, subd. (a)).

er the legal father of the minor children he must be deemed their stepparent, Soto sought to invoke visitation jurisdiction under Civil Code section 4351.5.

Linda Marckwardt responded to the order to show cause by moving to dismiss the proceeding for lack of subject matter jurisdiction. Respondent court denied the motion and ordered that "the parties" be evaluated by a court psychiatrist, at Soto's expense, with proceedings to resume upon presentation of the psychiatrist's report. Marckwardt then petitioned us for a writ of prohibition, alleging that upon entry of the adoption decree the dissolution court had lost jurisdiction to deal with the minor children and that the ongoing visitation proceedings involve an impermissible intrusion by Soto and the court into the Marckwardts' family affairs. We issued an alternative writ, staying the proceedings below.

## STANDING

■ As a threshold matter, Soto challenges Marckwardt's status as a "person beneficially interested" in the proceedings below—to which Marckwardt is not formally a party—and consequently entitled to obtain prohibition against them. (Code Civ. Proc., § 1103.) The petition and record establish Marckwardt's standing amply. By the petition he claims entitlement "to maintain the privacy and stability of his family against the intrusion of Respondent and Real Party in Interest," and in an accompanying declaration he avers that Soto's invocation of the court's claimed jurisdiction is causing the Marckwardt family both financial and emotional detriments. These allegations are buttressed by the fact that respondent court has already acted to interpose its psychiatrist into the family setting. And while Soto asserts that this order "does not require [Marckwardt's] attendance or participation in any proceeding or psychiatric exam[ination]," the "Stipulation for Psychiatric Evaluation" proferred, pursuant to the court's order, by Soto's counsel to Linda Marckwardt's counsel (and rejected by her) names Marckwardt—as well as his wife, Soto, and the children—as a person to be examined. Finally, the very basis of this proceeding is that respondent court is interjecting itself into the affairs of petitioner, his wife, and their children in a manner unauthorized by law. Petitioner is clearly a person beneficially interested in these proceedings and in arresting them. (*Monterey Club* v. *Superior Court* (1941) 48 Cal.App.2d 131, 143 [119 P.2d 349] (corporation granted prohibition against proceedings to enjoin its lessor and licensee from operating games for it; "the claimed legal rights of the Monterey Club being injuriously affected by the judicial action of respondent court, the club is 'beneficially interested' and therefore authorized to apply for a writ of prohibition"); *Klose* v. *Superior Court* (1950) 96 Cal.App.2d 913, 916 [217 P.2d 97] (city councilman granted prohibition against mandate proceeding

to fill his office; "petitioner is beneficially interested in this proceeding . . . as a person claiming title to the office in controversy."))

## JURISDICTION

■ The question at issue in this proceeding is whether the superior court has jurisdiction, in the dissolution proceeding between Linda Marckwardt and Soto, to grant Soto visitation of the children whose adoption has finally transpired with his consent. The traditional jurisdiction of the family court over visitation arises from Civil Code section 4351, which provides in part that "[i]n proceedings under this part [the Family Law Act], the superior court has jurisdiction to inquire into and render such judgments and make such orders as are appropriate concerning . . . the custody and support of minor children of the marriage . . . ." Prima facie, this grant of jurisdiction is *not* available to Soto by reason of the Supreme Court's decision in *Younger* v. *Younger* (1895) 106 Cal. 377 [39 P. 779].

In that case a mother had obtained a decree of divorce awarding her custody of the minor child. She then allowed the child to become adopted by its maternal great-grandfather. After the adoption was final, the former husband obtained an order in the divorce proceeding modifying the custody decree to grant him certain custody and visitation rights. On appeal by the mother, the order was reversed for lack of subject matter jurisdiction. Interpreting the predecessor of Civil Code section 4351 (former Civ. Code, § 138, which gave the divorce court jurisdiction over "the custody, care, and education of the children of the marriage"), the court held that the jurisdiction granted thereby "subsist[s] so long only as the status of the child remains that of a child of the parties—'of the marriage.' This . . . it has ceased, in legal contemplation, to be." (106 Cal. at p. 380.) In reaching this dispositive conclusion, the court relied upon the regularity of the adoption proceeding and upon Civil Code section 229, which provides: "The parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it." (106 Cal. at p. 379.) While *Younger* is not of the latest vintage, its teachings have been recognized in later decisions and never discarded. (E.g., *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 856 [146 Cal.Rptr. 26] ("In an adoption proceeding, the decree of adoption terminates the jurisdiction of a court to make orders as to the custody or support of the child by the natural parent. This is true even when a prior decree of dissolution was in existence." [Citing *Younger*]); see also *In re DeLeon* (1924) 70 Cal.App. 1, 6 [232 P. 738] (Under former section 138 "care and custody, however, can only be inquired into while the child in question is and continues to be, in contemplation of law, the child of the divorced parents. If, by any legal proceeding, this relationship is extin-

guished, the jurisdiction and power of the court in which the divorce proceedings were taken and had immediately terminate."); *In re Marriage of Jenkens* (1981) 116 Cal.App.3d 767, 772 [172 Cal.Rptr. 331] (same).)

Soto's invocation of the dissolution court's jurisdiction below, however, was not grounded upon Civil Code section 4351's jurisdiction over "children of the marriage." Rather, Soto claimed jurisdiction under Civil Code section 4351.5, enacted in 1982, which extended the court's jurisdiction to a further area in which section 4351 did not and does not reach. In *Perry v. Superior Court* (1980) 108 Cal.App.3d 480 [166 Cal.Rptr. 583] (*Perry*), a dissolution court had awarded the husband visitation rights to his wife's child by a prior marriage, who had lived with the parties throughout their six-year marriage shortly after his birth. The Court of Appeal held this order to have been beyond the superior court's jurisdiction under section 4351, inasmuch as the child was not a "child of the marriage." In so holding, the court observed that the necessary operation of the statutory language upon stepparents involved in marital dissolution proceedings was not "particularly palatable," and invited the Legislature "to address this thorny problem of visitation by stepparents." (108 Cal.App.3d at p. 485.) The Legislature's response to this invitation was new section 4351.5, the terms of which are set out in the margin.[2]

---

[2]"(a) Notwithstanding the provisions of Section 4351, in proceedings under Sections 4450 and 4503, the superior court has jurisdiction to award reasonable visitation rights to a person who is a party to the marriage that is the subject of the proceeding with respect to a minor child of the other party to the marriage, if visitation by that person is determined to be in the best interests of the minor child.

"(b) If a stepparent has petitioned or otherwise applied for an order of reasonable visitation rights pursuant to this section, the court shall set the matter of visitation rights for mediation. The purpose of the mediation proceeding shall be to effect a settlement of the issue of visitation rights of all parties. The mediator shall meet the minimum qualifications required of a counselor of conciliation as provided in Section 1745 of the Code of Civil Procedure.

"(c) Mediation proceedings shall be held in private and shall be confidential, and all communications, verbal or written, from the parties to the mediator made in a proceeding pursuant to this section shall be deemed to be official information within the meaning of Section 1040 of the Evidence Code.

"(d) The mediator shall have the authority to exclude counsel from participation in the mediation proceedings where, in the discretion of the mediator, exclusion of counsel is deemed by the mediator to be appropriate or necessary. The mediator shall have the duty to assess the needs and interests of the child involved in the controversy and shall be entitled to interview the child when the mediator deems such interview appropriate or necessary.

"(e) The mediator may, consistent with local court rules, render a recommendation to the court as to the visitation of the child. The mediator may, in cases where the parties have not reached agreement as a result of the mediation proceeding, recommend to the court that an investigation be conducted pursuant to Section 4602, or that other action be taken to assist the parties to effect a resolution of the controversy prior to any hearing on the issues. The mediator may, in appropriate cases, recommend that mutual restraining orders be issued, pending determination of the controversy, to protect the well-being of the child involved in the controversy. Any agreement reached by the parties as a result of the mediation shall be reported to the court and to counsel for the parties by the mediator on the day set

In brief, the new statute grants the court in a marital dissolution or nullity proceeding "jurisdiction to award reasonable visitation rights to a person who is a party to the marriage that is the subject of the proceeding with respect to a minor child of the other party to the marriage . . . ." (Subd. (a).) It then provides that a stepparent's application for such rights shall first be subject to mediation (subds. (b) through (f)); if the matter is not so resolved, it is to be decided by a hearing. (Subds. (g), (h).) Finally, the statute provides that "[a]ny visitation right granted to a stepparent pursuant to this section shall not conflict with any visitation or custodial right of a natural or adoptive parent who is not a party to the proceeding." (Subd. (i).)

Soto grounds his assertion of jurisdiction principally upon the initial, enabling provisions of the statute. He reasons: Soto is (or was) "a party to the marriage that is the subject of the proceeding" below; the Marckwardt children were and remain minor children "of the other party to the marriage" (Linda Marckwardt); therefore, jurisdiction to award visitation is conferred. Moreover, Soto discounts the effect of Civil Code section 229 (adoption cuts off rights of natural parent or parents over child), asserting that even though his "legal relationship with the children . . . was extinguished by the adoption proceeding," he falls within the contemplation of the new statute because of his relationship with Linda Marckwardt. Further, Soto points to the final subdivision of section 4351.5, providing that a visitation right granted thereunder shall not conflict with the "custodial right of a natural or adoptive parent who is not a party to the proceeding"; he implicitly suggests that this provision acknowledges the authority and potential for him to receive visitation rights while Marckwardt yet is the new legal father of the children.

---

for mediation or any time thereafter designated by the court.

"(f) A natural parent who is not a party to the proceeding shall not be required to participate in the mediation proceedings; however, failure to participate shall be a waiver of that parent's right to object to any settlement reached by the other parties during mediation or to require a hearing on the matter.

"(g) If the issue of visitation rights of all parties is not settled by agreement of all parties who participate in mediation, the mediator shall so inform the court in writing and the court shall set the matter of visitation rights for hearing. Each natural parent and the stepparent seeking visitation rights shall be given an opportunity to appear and be heard on that issue.

"(h) Notice of mediation and of any hearing to be held pursuant to this section shall be given to the stepparent seeking visitation rights, to each of the parents of the child, and to the counsel of record of each of the parents in any proceeding under Section 4450 or 4503 with regard to their marriage. The notice shall be given by certified mail, return receipt requested, postage prepaid, to the last known address of each of the parents and his or her counsel.

"(i) Any visitation right granted to a stepparent pursuant to this section shall not conflict with any visitation or custodial right of a natural or adoptive parent who is not a party to the proceeding."

We cannot agree. Fundamental to Soto's assertion of jurisdiction under section 4351.5 is the unsupportable proposition that Soto is a "stepparent" of his biological children. While the initial language of the statute might upon first glance seem susceptible to the interpretation Soto seeks to ascribe, the remainder of the statute is emphatic that "stepparents" are the parties authorized to obtain visitation by this statute. (Subd. (b) (*"If a stepparent has petitioned or otherwise applied for an order of reasonable visitation rights pursuant to this section,* the court shall set the matter of visitation rights for mediation."); subd. (g) (If mediation fails the matter shall be set for a hearing, whereupon "[e]ach natural parent *and the stepparent seeking visitation rights* shall be given an opportunity to appear and be heard . . . ."); subd. (h) ("Notice of mediation and of any hearing to be held pursuant to this section shall be given to *the stepparent seeking visitation rights,* to each of the parents of the child, and to the counsel of record . . . ."); subd. (i) (*"Any visitation right granted to a stepparent pursuant to this section* shall not conflict [etc.]."") (Italics added.))[3]

Likewise, Soto's order to show cause that initiated the proceedings below was entitled one for "stepparent visitation," and his supporting declaration averred: "I am, therefore, no longer in the eyes of this court, the father of said minor children, and therefore, I can only be a step parent of said minor children in that I was previously married to their mother . . . ." But Soto *cannot* therefore be a stepparent. ■ A "stepfather" is defined by a leading modern dictionary as "a man who succeeds one's father as the husband of one's mother." (Random House College Dict. (1982) p. 1287.) ■ Black's Law Dictionary defines "stepparent" as "[t]he mother or father of a child born during a previous marriage of the other parent and hence, *not the natural parent of such child."* (Black's Law Dict. (5th ed. 1979), p. 1268, italics added.) A somewhat broader concept of stepfather and stepchild, not requiring that the prior father have been married to the mother, appears in some judicial decisions. (E.g., *Larsen* v. *Harris Structural Steel Co.* (1930) 230 App.Div. 280 [243 N.Y.S. 654, 655].) Under *any* such definition, Soto is not the stepparent of his natural children, for he is not and never has been simultaneously the husband of their mother while not their legal father.

Our conclusion that respondent court lacks jurisdiction to grant Soto visitation under either of Civil Code sections 4351 and 4351.5 is fortified by *In re Marriage of Halpern* (1982) 133 Cal.App.3d 297 [184 Cal.Rptr. 740],

---

[3] We here take note that section 4351.5 has been amended, effective January 1, 1984, by Statutes 1983, chapter 1277, section 1. The amendments include relettering of the subdivisions just quoted, and insertion therein of the words "or grandparent" immediately following the word "stepparent." These alterations of the quoted provisions conform them to new subdivision (b), which deals with grandparent visitation.

the case authority upon which Soto principally relies. In *Halpern* the court affirmed a denial of visitation of a husband to a child who had been born during the marriage but whom tests showed was not the biological child of the husband. The holding was based upon discretion not jurisdiction. The court preliminarily held that the trial court had possessed jurisdiction to determine questions of visitation, despite the biological facts that had been stipulated to during the proceedings, because the parties had initially invoked jurisdiction over the child as one "of the marriage" and these claims satisfied the " 'basic postulate' " of subject matter jurisdiction that " ' "[j]urisdiction of the cause attaches at the time of the commencement of the action." ' " *(Id.* at p. 309.)[4]

Here, the jurisdiction Soto seeks to assert under section 4351.5 could *not* have attached at the commencement of the dissolution action, not only because that jurisdiction is limited to true stepparents (or because the statute was not then in effect), but because at that time Soto did not contend and could not have contended that he was seeking visitation of a child of his spouse who was not his child. Nor does *Halpern* stand, as Soto asserts, for the principle that section 4351 jurisdiction ("children of the marriage") was not defeasible because present at the commencement of the dissolution case. *Halpern* held that since the pleadings and assertions of the parties raised questions under section 4351 the court had jurisdiction to determine those issues. (133 Cal.App.3d at p. 310.) Here, after the court had determined the issues tendered it under section 4351 in the initial dissolution proceedings, Soto consented to adoption of his children by Marckwardt, thus removing them from the jurisdictional purview of the statute. *(Younger* v. *Younger, supra,* 106 Cal. 377.)

In response to our alternative writ, respondent court has filed a memorandum explaining its actions and offering authorities in support of the proceedings below. The gist of respondent's position is articulately expressed thus: "Jurisdiction was assumed, not for the purpose of inquiring into any rights of the natural father, but to determine what was in the best interests of the child." In this connection respondent cites Civil Code section 4600, subdivision (b), which sets forth the legislatively determined order of preference for custody awards "according to the best interests of the child," and also Civil Code section 4601, which provides that "[i]n the discretion of the court, reasonable visitation rights may be granted to any other person [besides a parent] having an interest in the welfare of the child."

---

[4]The *Halpern* court found its jurisdictional holding consistent with that of the *Perry* case because in *Perry* there had been no initial allegations of parent-child status; indeed, the concurring opinion in *Perry* stated that "[i]f husband had asserted in his response to the petition in the dissolution action that there were children of the marriage because he stood *in loco parentis* with regard to [the child], the superior court might have jurisdiction over the subject matter." (108 Cal.App.3d at p. 486.)

We have carefully considered all of the points and authorities adduced by respondent, and we acknowledge his concerns and his conscientious accounting of them. However, the threshold jurisdictional bar to the proceedings below remains. "The 'best interests' test [of Civ. Code, § 4600] does not confer jurisdiction . . . ." (*In re B. G.* (1974) 11 Cal.3d 679, 696, fn. 24 [114 Cal.Rptr. 444, 523 P.2d 244].) And while the substantive discretion conferred by Civil Code section 4601 is broadly stated, "[t]he plain fact, however, is that in a marital dissolution proceeding the legislative grant of authority to the court to deal with custody or visitation matters is constricted by Civil Code section 4351"—and now also by section 4351.5. (*Perry, supra,* 108 Cal.App.3d at p. 484.) Indeed, it has been noted that there are numerous other remedies allowing the court to intervene in child custody and visitation matters, but that all of them "focus on the same question: Where and with whom should a child live when something has occurred to disrupt family unity or balance?" (Bodenheimer, *The Multiplicity of Child Custody Proceedings—Problems of California Law* (1971) 23 Stan.L.Rev. 703, 705.) Here, upon solidification of the Marckwardt household by the adoption, the children's "family unity [and] balance" were restored, and the possibility of or need for the intervention of "protracted or repeated litigation concerning custody" (*id.* at p. 703) came to a jurisdictional end.[5]

Let a peremptory writ of prohibition issue, restraining respondent court from taking any further proceedings pursuant to the order to show cause re stepparent visitation filed March 28, 1983, in that court's case no. SWD 74876 other than to dismiss those proceedings for lack of subject matter jurisdiction.

Thompson, J., and McVittie, J.,* concurred.

---

[5]Soto's protest that since the court would have jurisdiction to grant him visitation were the Marckwardts' marriage to break down the children should not have to wait for such an unfortunate event thus begs the point. At the present time the children's family status has been reestablished, in part through Soto's own consensual act, and judicial intervention now would not rectify any dislocation but rather allegedly would be the very cause of it.

*Assigned by the Chairperson of the Judicial Council.