[No. A052142. First Dist., Div. Two. Apr. 20, 1992.]

In re the Marriage of AISHA and HOWARD E. HINMAN.
AISHA HINMAN, Appellant, v.
HOWARD E. HINMAN, Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II-IX.

COUNSEL

Richard Hamm and Robert L. Walker for Appellant.

Joan Mann Thomas, DeGoff & Sherman and Richard Sherman for Respondent.

OPINION

SMITH, J.—Appellant Aisha Hinman (Aisha) appeals from several orders issued after entry of a final judgment dissolving the marriage between herself and respondent Howard E. Hinman (Howard). Although she raises a number of issues, the primary one is whether a stipulated judgment awarding a parent and stepparent joint custody of a minor child may subsequently be attacked by the parent as void for lack of jurisdiction. We will reject the contention that it may and, with minor exceptions, reject the remainder of Aisha's challenges to the orders of the trial court.

## BACKGROUND

On February 22, 1989, Aisha petitioned for dissolution of the marriage of seven years and four months to Howard. The petition listed 5 minor children of the marriage: Fairiz age 11, Farah age 10, Julianna, age 6, Joshua, age 4, and Justin, a newborn. In fact the two oldest children, Fairiz and Farah, were

fathered by Aisha's husband from a former marriage. In her petition, Aisha requested that she and Howard share joint legal custody of all five children and that she be awarded physical custody.

The case was tried before the Honorable Judith Kozloski on December 18, 1989. On the sixth day of trial the case settled. The parties entered into a stipulation which provided that Aisha and Howard were to share joint physical and legal custody of the five children, who were to continue to reside in the family home with Howard. Aisha was present with her attorney when the settlement was placed on the record and stated that she was agreeable to its terms.

A final judgment was entered on April 24, 1990 (further calendar references are to that year). In addition to providing for joint custody, the judgment included a $40,000 payment by Howard to Aisha to equalize the community property, a waiver of spousal support by both parties and a prescribed visitation schedule for the children; Howard was to assume all outstanding debts of the marriage and the children were to be seen by a child therapist at Howard's expense.

On June 28, Aisha filed a notice of motion seeking to strip Howard of all custody over the two older children and for other relief. Aisha did not premise her request for sole custody of Fairiz and Farah on changed circumstances; instead the sole ground for the request for modification was that "[m]y attorney . . . has informed me that this court does not have jurisdiction to award these two children to [Howard], since he is not the natural father. . . ."

Howard filed his own notice of motion on July 2, requesting changes in the visitation schedule and other relief. Howard's motion was heard first, on July 20. The hearing resulted in the issuance of two orders: On August 3, the court ordered that Attorney Anna Marie Rossi be appointed for the five children, and that each party contribute equally toward her fee. On September 10, the court issued an order setting forth an elaborate visitation and vacation schedule, adjudging various rights of the parties with respect to the minor children, and spelling out the mechanics of Howard's payment to Aisha for her share of the community property.

A hearing on Aisha's motion was held on October 18. The court denied the motion for change of custody, ruling that it had jurisdiction to enter the original judgment awarding Howard joint custody of Fairiz and Farah. On November 7, a written order was rendered, denying the motion to change custody, appointing a special master to mediate further child-related disputes, readjusting the children's visitation schedule and granting other relief.

On November 29, the court ordered that the children's attorney take custody of their passports and birth certificates and enjoined Aisha from coming to Howard's home except in an emergency. On December 3, the court appointed a special master to mediate outstanding issues between the parties regarding property division. On December 26, Aisha appealed from all of the foregoing orders.

APPEAL

I

*Jurisdiction re Child Custody*

Aisha claims that the court erred in refusing to grant her motion for sole custody of Fairiz and Farah. Since there is no dispute that Howard is not their biological father, Aisha argues, the original judgment allowing him to share custody of these two children was an act in excess of the court's jurisdiction.

Aisha's principal authority is *Perry* v. *Superior Court* (1980) 108 Cal.App.3d 480 [166 Cal.Rptr. 583] (*Perry*). In that case, Roxanna Perry gave birth to a son by her former husband nine months before her marriage to Frederick. Subsequently, Roxanna filed a petition for dissolution of the marriage, stating that there were no minor children. The stipulation between Roxanna and Frederick, which was incorporated into the interlocutory judgment, also stated there were no minor children of the marriage and was silent as to custody and visitation.

Frederick subsequently brought an order to show cause, seeking visitation with his stepson. The Court of Appeal upheld the trial court's ruling that it lacked jurisdiction to entertain Frederick's motion. The court first observed that visitation was a form of custody. (108 Cal.App.3d at p. 483.) It then held that since the legislative grant of authority over custody and visitation was limited to "minor children of the marriage" (Civ. Code,[1] § 4351), a trial court in a dissolution proceeding has no authority to grant visitation to children who were not of the marriage "in the same way as it is limited to adjudicating the rights of the parties in marital property [citation] and to ordering parents to pay child support [citation]." (108 Cal.App.3d at p. 484.)

The Legislature responded to the holding in *Perry* by enacting section 4351.5, which expressly grants the trial court authority to award a stepparent visitation rights upon a finding that it is in the child's best interest. In *In re*

[1]Unless otherwise indicated, all further statutory references are to the Civil Code.

*Marriage of Lewis & Goetz* (1988) 203 Cal.App.3d 514 [250 Cal.Rptr. 30], another case relied on by Aisha, the court held that the grant of authority under section 4351.5 extended only to visitation, and did not permit the family law court to make a joint custody award to a stepparent. (203 Cal.App.3d at p. 518.)

In both *Perry* and *Lewis & Goetz*, however. the mothers did not list the subject children as children of the marriage in their pleadings, and they each objected to the nonparent's attempt to obtain custody or visitation rights. Accordingly, the courts correctly held that the nonparents had no statutory basis on which to predicate their requests for parental rights. (See also *Curiale* v. *Reagan* (1990) 222 Cal.App.3d 1597, 1600 [272 Cal.Rptr. 520] [nonparent lesbian has no standing to assert custody or visitation rights over former partner's minor child].) Here, Aisha herself invoked the jurisdiction of the court by alleging in her petition that both Farah and Fairiz were minor children "of the marriage." That allegation "confers subject matter jurisdiction upon the court to determine custody, a jurisdiction which does not vanish even if later it is shown there are no such children." (*Peery* v. *Superior Court* (1985) 174 Cal.App.3d 1085, 1095 [219 Cal.Rptr. 882]; see also *Marckwardt* v. *Superior Court* (1984) 150 Cal.App.3d 471, 478-479 [198 Cal.Rptr. 41].)

Having initially invoked the court's power to determine custody, Aisha then *stipulated to a judgment* giving Howard joint custody. ■ A party who participates in or consents to a judgment which otherwise would be beyond the court's authority is precluded from attacking it collaterally, absent exceptional circumstances. (*Peery* v. *Superior Court, supra,* 174 Cal.App.3d 1085, 1094; *Spahn* v. *Spahn* (1945) 70 Cal.App.2d 791, 794-801 [162 P.2d 53]; 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, §§ 267, 280, pp. 665, 686.)

The apparent conflict between the above rule and the time-worn axiom that jurisdiction cannot be conferred by consent (2 Witkin, *op. cit. supra,* §.10, p. 374; *In re Marriage of Ben-Yehoshua* (1979) 91 Cal.App.3d 259, 263 [154 Cal.Rptr. 80]) may be reconciled by identifying the distinct meanings attached to the phrase "lack of jurisdiction." (See generally *Abelleria* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 290-291 [109 P.2d 942, 132 A.L.R. 715].) ■ "In its most fundamental or strict sense, lack of jurisdiction means 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or parties.' [Citations.] But in its ordinary usage the word encompasses many other situations, including judicial acts in excess of jurisdiction. [Citation.] While the fundamental type of jurisdiction can never be conferred by consent of the parties, the latter

type is often subject to principles of consent and waiver. [Citation.]" (*In re Christian J.* (1984) 155 Cal.App.3d 276, 279 [202 Cal.Rptr. 54], italics in original omitted.)

 It follows that unless the trial court lacked subject matter jurisdiction in the most fundamental sense of the word, i.e., its " 'power to hear or determine the case' " (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 47 [231 Cal.Rptr. 757]), Aisha is precluded from attacking the provision of the judgment awarding joint custody of Fairiz and Farah to Howard by virtue of her consent to it.

*In re Marriage of Halpern* (1982) 133 Cal.App.3d 297 [184 Cal.Rptr. 740] (*Halpern*), and *Adoption of Bonner* (1968) 260 Cal.App.2d 17 [66 Cal.Rptr. 812] (*Bonner*), establish that the court here did not lack jurisdiction to render its order in the fundamental sense. In *Halpern*, the pleadings initially alleged that the wife's child was a minor child of the marriage. Blood tests later established that the husband was not the child's biological father. The wife then sought to amend her petition and preclude visitation by the husband. Citing the principle that jurisdiction of the cause attaches at the time of commencement of the action, the *Halpern* court ruled that the wife's petition and the husband's response alleging that the minor child was a child of the marriage satisfied the " 'basic . . . postulate[]' " of subject matter jurisdiction over the cause. (133 Cal.App.3d at pp. 309-310.)

In *Bonner*, the parties to a dissolution proceeding listed a minor child, Laura, as a child of the marriage. They entered into a settlement agreement, later approved by the court and incorporated into a divorce decree, which awarded custody of Laura to the wife and ordered the husband to pay support. Unbeknownst to the court, neither spouse was Laura's biological parent. (*Bonner, supra,* 260 Cal.App.2d at p. 19.) In a subsequent adoption proceeding it was argued that the court in the prior divorce action had no jurisdiction over Laura and that any decree it had made with respect to her was void. In rejecting this claim, the court held that the prior dissolution judgment was binding between the parties and that the husband was estopped from attempting to relitigate the question of parentage. (*Id.,* at p. 20.)

The appellants in *Bonner* tried the same argument Aisha advances here: that because the court's authority was limited by statute to " 'children of the marriage' " and Laura was not in fact such a child, the prior order was void for want of jurisdiction. The *Bonner* court pointed out that this argument confused acts in excess of jurisdiction with error in the exercise of jurisdiction in the first instance. As long as all parties affected are actually or constructively before the court, the jurisdictional facts determined by it

cannot be attacked in a collateral proceeding. (*Bonner, supra,* 260 Cal.App.2d at p. 21, citing *Estate of Estrem* (1940) 16 Cal.2d 563, 570 [107 P.2d 36].)

From the foregoing, we conclude that while the court's award of joint custody to Howard may have been beyond its statutory authority, the court did not lack jurisdiction in the fundamental sense. (Cf. *People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 66, 70 [2 Cal.Rptr.2d 389, 820 P.2d 613].) Under principles of estoppel and waiver, Aisha's designation of Fairiz and Farah as children of the marriage in her petition and her subsequent stipulation awarding Howard primary physical custody precludes her from later challenging the order on jurisdictional grounds.[2]

Policy reasons also support our conclusion. Aisha stipulated to an order which resulted in two of her children being placed under the care and custody of Howard. The children were innocent parties in this bitter conflict between Aisha and Howard and the court's paramount concern at all times was the protection of their welfare. (See *In re Marriage of Goodarzirad, supra,* 185 Cal.App.3d at pp. 1026-1027.)

■ " 'It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.' [Citation.]" (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 730-731 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028].) ■ To allow Aisha to consent to a judgment awarding Howard joint custody and then have the unlimited power to undo that arrangement at any later time by claiming lack of jurisdiction would violate California's strong policy in favor of preserving an established mode of child custody "unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest." (*Burchard* v. *Garay*

---

[2]In *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020 [230 Cal.Rptr. 203], a case involving the opposite of the situation here, the parties entered into a stipulation *divesting* the court of jurisdiction over custody of their minor child. Although the court struck down the stipulation, its reasoning supports the result we reach here.

In *Goodarzirad* the husband stipulated to a judgment in which he waived his right to seek custody or visitation with the minor child in return for the wife's relinquishing all claim for past and future child support. He later moved to vacate the judgment on grounds that the court exceeded its jurisdiction. The appellate court held that *the trial court did not lack jurisdiction in the fundamental sense* (*id.,* at p. 1025), but held that the judgment was invalid due to this state's strong public policy in favor of maintaining judicial supervision over child custody to protect and maintain the best interests of the children. (*Id.,* at pp. 1026-1027.)

*Goodarzirad* thus acknowledges the rule that a stipulated judgment not void *ab initio* may not be collaterally attacked absent unusual circumstances or compelling policy considerations. No such considerations are present here.

(1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237]; see § 4600, subd. (c).) ██ ██ We cannot and will not permit such a result to occur here.[3]

## II-IX*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The purported appeal from the August 3 order appointing Ms. Rossi as attorney for the children is dismissed. The trial court is directed to modify its order of November 29 by deleting paragraph 10. The court is further directed to modify its amended order of November 7 by deleting paragraphs 10(b), 13(a) and that portion of paragraph 2 ordering Howard and Aisha to undergo therapy. In all other aspects the orders appealed from are affirmed. Aisha shall pay costs on appeal.

Kline, P. J., and Peterson, J., concurred.

---

[3]We reject Aisha's attack on the judgment on the ground that it violated the rights of the children's biological father. An appellant may only complain of errors which injuriously affect her; she may not urge as grounds for reversal those committed against a nonparty. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 246, p. 251; *Nichols* v. *Nichols* (1933) 135 Cal.App. 488, 491 [27 P.2d 414].)

*See footnote, *ante*, page 711.