[No. F031975. Fifth Dist. Apr. 13, 1999.]

In re KIMBERLY S., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
LEANNE W., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

———

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

## COUNSEL

Francia M. Welker, under appointment by the Court of Appeal, for Defendant and Appellant.

Phillip S. Cronin, County Counsel, and Nannette J. Stomberg, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—We are called upon to determine whether a birth parent must be advised of the availability of a kinship adoption agreement prior to termination of parental rights (Fam. Code, § 8714.7). A kinship adoption agreement allows, under certain circumstances, the adoptive parents, the birth relatives, and the child, to enter into an agreement regarding continuing contact and/or visitation between the child and designated birth relatives. The agreement is intended as a tool to promote a relative's interest in adoption. It further seeks to expedite legal permanency for children who cannot return to their parents. Leanne W., the mother of Kimberly S., appeals, claiming error because she was not given an opportunity to enter into a kinship adoption agreement prior to termination of her parental rights. As we will discuss, the Legislature did not intend kinship adoption agreements to alter termination of parental rights. Leanne was therefore not entitled in this proceeding to notice of the availability of such an agreement. We affirm.

### FACTS AND PROCEEDINGS

Kimberly S. was born on September 14, 1996. On December 2, 1996, Leanne W. was arrested for being under the influence of a controlled substance. On December 3, 1996, a juvenile dependency petition was filed by the Fresno County Department of Social Services (Department) alleging that Leanne had a substance abuse problem which negatively affected her ability to provide adequate supervision for Kimberly.[1] Kimberly was detained and placed with her maternal aunt.[2]

At the April 2, 1997, jurisdictional hearing, the court found true the allegation that because of her substance abuse problem Leanne was unable to adequately supervise Kimberly. Leanne was ordered to obtain counseling

---

[1] Allegations were also made against Kimberly's father. His parental rights were terminated. He has not appealed.

[2] At the time this petition was filed, Leanne had three other children. One child had been adopted after reunification efforts had failed. The other two children were currently dependents of the court in another state.

and substance abuse treatment. It was recommended that Leanne enter an inpatient program where Kimberly could be placed with her. Kimberly remained in the custody of a maternal aunt.

On August 26, 1997, Kimberly was placed with her maternal grandmother. Prior to the six-month review hearing on October 2, 1997, Leanne's drug tests were negative and Leanne's visits with Kimberly were going well. Leanne was having difficulty getting accepted into an inpatient program because she had hepatitis. Leanne had not attended parenting or domestic violence courses, but she planned to do so. At the six-month review hearing, the court found the current placement to be appropriate, ordered that reunification services continue, and found that it would be detrimental to return Kimberly to Leanne. Kimberly remained in the care of her maternal grandmother.

A report was prepared for the 12-month review hearing. Leanne continued to test clean for drugs and her visits with Kimberly were going well. Leanne had not followed through on mental health counseling and had failed to participate in a parenting program. Although Leanne completed an intensive outpatient drug program, she failed to participate in the aftercare program. Leanne had started a domestic violence class.

By letter dated February 27, 1998, Leanne informed the social worker that she was giving up her rights to Kimberly and giving those rights to the maternal grandmother. Leanne stated that she was going out of state to see her other children. She indicated in her letter that she would like to retain the right to see and contact Kimberly. Based on the above letter and on Leanne's failure to fully comply with the case plan, the worker recommended that reunification services be terminated and the case be transferred to the assessment unit for permanency planning.

At the 12-month review hearing, the trial court terminated reunification services and referred the case to the assessment unit for selection and implementation of a permanent plan. Kimberly was ordered to remain in the care of her maternal grandmother.

In the social worker's report prepared for the permanency planning hearing, it was found that Kimberly was adoptable and that her current caretaker, the maternal grandmother, was suitable and committed to the adoption of Kimberly. Leanne visited Kimberly less frequently because she had been traveling to and from another state to visit her other children. Termination of parental rights was recommended.

On August 17, 1998, the trial court terminated Leanne's parental rights. She appeals.

## DISCUSSION

### I.*

### *No Waiver*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### II.

### *No Duty to Advise of Availability of Kinship Adoption Agreement*

For over a century the courts in California have held that birth parents' rights to their child are extinguished when the child is adopted and the courts are without authority to make orders regarding care, custody and/or support between the birth parents and the child. (*Younger* v. *Younger* (1895) 106 Cal. 377 [39 P. 779]; *Marckwardt* v. *Superior Court* (1984) 150 Cal.App.3d 471 [198 Cal.Rptr. 41]; *Huffman* v. *Grob* (1985) 172 Cal.App.3d 1153 [218 Cal.Rptr. 659]; *In re Sylvia R.* (1997) 55 Cal.App.4th 559 [64 Cal.Rptr.2d 93].) The rule extinguishing all legal rights between an adopted child and the birth parents is based on a "policy of providing adopted children with stable homes free of protracted or repeated litigation concerning custody." (*Huffman* v. *Grob, supra,* 172 Cal.App.3d at p. 1158.)

█ In 1997, legislation was passed altering the long-standing rule mandating extinguishment of birth parents' rights after an adoption of their child. The Legislature determined that in limited circumstances the goal of providing stable homes to children may be fostered by allowing relatives of the child who are the prospective adoptive parent or parents, the birth relatives (including the birth parent or parents), and the child to enter into agreements providing for visitation, future contact, and/or sharing of information. Such an agreement is known as a kinship adoption agreement.

Family Code section 8714.7 sets forth the rules regarding kinship adoption agreements. It provides in pertinent part:

"(a) Nothing in the adoption laws of this state shall be construed to prevent the adopting parent or parents, the birth relatives, including the birth parent or parents, and the child from entering into a written agreement to permit continuing contact between the birth relatives, including the birth parent or parents, and the child if the agreement is found by the court to be in the best interests of the child at the time the adoption petition is granted. The terms of any kinship adoption agreement executed under this section shall be limited to, but need not include, all of the following:

---

*See footnote, *ante,* page 405.

"(1) Provisions for visitation between the child and a birth parent or parents and other birth relatives, including siblings.

"(2) Provisions for future contact between a birth parent or parents or other birth relatives, including siblings, or both, and the child or an adoptive parent, or both.

"(3) Provisions for the sharing of information about the child in the future.

"(b) At the time an adoption decree is entered pursuant to a petition filed under Section 8714.5, the court entering the decree may grant postadoption privileges when an agreement for those privileges has been entered into pursuant to subdivision (a).

"(c) This section is applicable only to kinship adoption agreements in which the adopting parent is a relative of the child or a relative to the child's half-sibling and the adoption petition is filed under Section 8714.5. For purposes of this section and Section 8714.5, 'relative' means an adult who is related to the child or the child's half sibling by blood or affinity, including all relatives whose status is preceded by the words 'step,' 'great,' 'great-great,' or 'grand,' or the spouse of any of these persons, even if the marriage was terminated by death or dissolution.

"(d) The child who is the subject of the adoption petition shall be considered a party to the kinship adoption agreement. The written consent to the terms and conditions of the kinship adoption agreement and any subsequent modifications of the agreement by a child who is 12 years of age and older is a necessary condition to the granting of privileges regarding visitation, contact, or sharing of information about the child, unless the court finds by a preponderance of the evidence that the agreement, as written, is in the best interests of the child. Any child who has been found to come within Section 300 of the Welfare and Institutions Code or who is the subject of a petition for jurisdiction of the juvenile court under Section 300 of the Welfare and Institutions Code shall be represented by an attorney for purposes of consent to the kinship adoption agreement." (Added by Stats. 1997, ch. 793, § 5.)

The provision allowing kinship adoption agreements was part of Assembly Bill No. 1544 (1997-1998 Reg. Sess.) dealing with foster care, dependency and adoption procedures. This bill also contained Family Code section 8714.5, the legislative findings and declarations regarding the adoption of unmarried minors by relatives. It provides in pertinent part:

"(a) The Legislature finds and declares the following:

"(1) It is the intent of the Legislature to expedite legal permanency for children who cannot return to their parents and to remove barriers to

adoption by relatives of children who are already in the dependency system or who are at risk of entering the dependency system.

"(2) This goal will be achieved by empowering families, including extended families, to care for their own children safely and permanently whenever possible, by preserving existing family relationships, thereby causing the least amount of disruption to the child and the family, and by recognizing the importance of sibling and half-sibling relationships.

"(b) A relative desiring to adopt a child may for that purpose file a petition in the county in which the petitioner resides. Where a child has been adjudged to be a dependent of the juvenile court pursuant to Section 300 of the Welfare and Institutions Code, and thereafter has been freed for adoption by the juvenile court, the petition may be filed either in the county where the petitioner resides or in the county where the child was freed for adoption.

"·  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ·  .  .  .  .  .  .  .

"(d) If the adopting relative has entered into a kinship adoption agreement with the birth parent as set forth in Section 8714.7, the kinship adoption agreement, signed by the parties to the agreement, shall be attached to and filed with the petition for adoption under subdivision (b)." (Added by Stats. 1997, ch. 793, § 4.)

Included as part of Assembly Bill No. 1544 was an amendment to Welfare and Institutions Code section 366.26, subdivision (a), stating that kinship adoption agreements are applicable and available to all dependent children meeting the requirements of that section. Subdivision (a) was amended to read as follows: "(a) This section applies to children who are adjudged dependent children of the juvenile court pursuant to subdivision (c) of Section 360. The procedures specified herein are the exclusive procedures for conducting these hearings; Part 2 (commencing with Section 3020) of Division 8 of the Family Code is not applicable to these proceedings. *Section 8714.7 of the Family Code is applicable and available to all dependent children meeting the requirements of that section.* For children who are adjudged dependent children of the juvenile court pursuant to subdivision (c) of Section 360, this section and Sections 8604, 8605, 8606, and 8700 of the Family Code and Chapter 5 (commencing with Section 7660) of Part 3 of Division 12 of the Family Code specify the exclusive procedures for permanently terminating parental rights with regard to, or establishing legal guardianship of, the child while the child is a dependent child of the juvenile court." (Italics added.)

■  First, Leanne argues that Welfare and Institutions Code section 366.26 specifically mandates the application of kinship adoption agreements in dependency proceedings at the time of the permanency planning hearing.

Kinship adoption agreements are not limited to children in the dependency system; they are available to any child who meets the criteria. Welfare and Institutions Code section 366.26, subdivision (a) sets forth what laws are applicable and what laws are not applicable when a dependency court is terminating parental rights or establishing guardianship. The language inserted into this subdivision, that "Section 8714.7 of the Family Code is applicable and available to all dependent children meeting the requirements of that section," is not a mandate to the dependency court requiring it to advise the parties of the availability of a kinship adoption agreement; it merely describes one of the parameters of the authority of the family court in subsequent adoption proceedings. The amendment states that Family Code section 8714.7 is available to all dependent children, even if the rights of their birth parents have been involuntarily terminated by the juvenile court.

A kinship adoption agreement is a part of an adoption proceeding; it is to be approved, if at all, "by the court . . . at the time the adoption petition is granted." (Fam. Code, § 8714.7, subd. (a).) The agreement is incorporated into the terms of the adoption after birth relatives, adoptive parents, and the child, if of appropriate age, have agreed to the terms and the court finds the agreement is in the best interest of the child. (Fam. Code, § 8714.7, subd. (b).) A petition for adoption is not considered by the court until after the appellate rights of the natural parent have been exhausted. (Welf. & Inst. Code, § 366.26, subd. (j).)

In practical terms, a kinship adoption agreement may be initiated by either the birth parent(s), other birth relatives, or by the prospective adoptive parents. When a birth parent is contemplating relinquishing a child for adoption by a relative, the birth parent may decide to condition such relinquishment on the adoptive parent's agreement to allow the birth parent to maintain some form of open relationship with the child, such relationship to be embodied in a kinship adoption agreement as provided by the statute.

From the perspective of a prospective adoptive parent, that person may want the birth parent's continued involvement with the child, at some level, especially when the adoptive parent is a relative of the birth parent. The adoptive parent may view such involvement as beneficial for the child, may view such involvement as lessening tensions in the circumstance of an involuntary, dependency-related transfer of custody,[3] or may view such involvement as appropriate for a myriad of other reasons.

In the context of an involuntary, dependency-related transfer of custody, however, the birth parent has no cognizable interest in dictating the terms of

---

[3]The relevant legislative history suggests this was the primary situation the statute sought to address. The committee report comments state:

"This bill was introduced through the collaborative efforts of the counties, State Department of Social Services, children's advocates and relative caregivers over the past year to

the resulting adoption. The birth parent may try to persuade the adopting relative of the benefits of continued contact, but that effort concerns the terms of the adoption; it is not a condition to be imposed upon the termination of parental rights in the dependency proceeding. The sanctioning of kinship adoption agreements does not alter the adopting parents' ability to choose that the birth parents not have any contact with the child.

The dependency court has an alternative solution if it determines continued involvement of the birth parent is in the child's best interest. Thus, Welfare and Institutions Code section 366.26, subdivision (c)(1)(A), provides that the court can impose a permanent guardianship *without* termination of parental rights when such continued involvement of the birth parent is appropriate. Clearly the birth parent has a right to argue in favor of this

---

identify barriers to adoption for children living with relatives and to create an adoption plan for relatives which recognizes the unique circumstances of children placed with relatives.

"Currently, 40 percent to 46 percent of the approximately 100,000 children in foster care in California live with relatives, primarily because of the state's requirement to consider relatives as the first choice for placement. The majority of relative placements are grandparents, and the current foster care system has legal interventions and social worker involvement designed for foster parents that some maintain are not necessarily appropriate for relative placements or suitable for assuring the safety and long-term well being of children in these placements." (Sen. Rules Com. Rep., 3d reading analysis of Assem. Bill No. 1544 (1997-1998 Reg. Sess.) as amended Sept. 11, 1997.)

The arguments in support of the bill state:

"The sponsors assert that the most significant barrier cited by the relative caregivers to adoption was the adversarial juvenile court process that requires finding the birth parent unfit. Relatives are often uncomfortable with this traditional adoption because it severs all family ties and changes the family structure by making the adopting relative the child's legal mother or father. By offering relatives an alternative to traditional adoption, this bill attempts to move more children out of the foster care system and into permanent homes.

"According to a Child Welfare Research Center study, outcomes at four years for all children in relative placements show that 55 percent were reunified, 2.7 percent were adopted, 5.3 percent were placed in guardianships, and 31 percent were still in care. The only two exits from the child welfare system are family reunification or adoption. Since neither is appropriate for many kinship care placements, a substantial number of this population of foster children never achieve legal permanence.

"The kinship adoption model in this bill is an attempt to increase children's chances of permanence outside of the foster care system. The kinship adoption process proposed by this bill would allow children to have contact with their biological parents, the lack of which some speculate is a current barrier to relatives' interest in adopting." (Sen. Rules Com. Rep., 3d reading analysis of Assem. Bill No. 1544 (1997-1998 Reg. Sess.) as amended Sept. 11, 1997.)

Thus, a kinship adoption agreement may assuage the trepidations of a reluctant prospective adoptive relative parent because it allows the relative to adopt the child without appearing to advocate a role permanently severing all family ties with the birth parents. It is the intent of the Legislature that a kinship adoption agreement will encourage a qualified relative to move forward with an adoption, causing children to move out of foster care and into permanent homes, thereby expediting legal permanency. Given these reasons for kinship adoption agreements, it does not appear that the Legislature in any way intended to alter current dependency procedures to require that birth parents be advised of the availability of these agreements.

alternative resolution even after the court has ordered termination of reunification efforts, and regardless of whether the child is placed with a relative or a nonrelative. This alternative, and in some respects broader, form of advocacy by the birth parent of continued involvement with the involuntarily transferred dependent child fully vindicates the interests that, in the context of a voluntary relinquishment, are reflected in the kinship adoption agreement statute.

In the circumstances involving a dependent child, it is not normally the goal of the birth parent to *facilitate* adoption of a dependent child. If continued parental involvement (Welf. & Inst. Code, § 366.26, subd. (c)(1)(A)) or continued relative placement with a relative unwilling or incapable of adopting (Welf. & Inst. Code, § 366.26, subd. (c)(1)(D)) makes guardianship the disposition that is in the child's best interest, at least the legal possibility of a restoration of custody to the birth parent is maintained. With adoption—kinship or otherwise—the severance of the parental relationship with the birth parent is final and normally irreversible. A kinship adoption agreement does not aid a birth parent wishing to prevent termination of parental rights at the permanency planning hearing.[4]

Leanne contends that Family Code section 8714.5, subdivision (a)(1) and (2), particularly the portion which states that the goals of subdivision (a)(1) (removing barriers to adoption and expediting legal permanency) will be achieved by preserving existing family relationships, requires, as a logical extension of the legislative intent, that kinship adoption agreements be available to birth parents where applicable. Leanne claims that termination of the rights of a birth parent, one of the parties to the kinship adoption agreement, is hardly a preservation of existing family relationships.

What Leanne's argument fails to recognize is that a kinship adoption agreement will never be given effect unless parental rights are terminated. The termination of parental rights is a prerequisite to a decree granting

---

[4]In unusual circumstances, a reluctant relative might be persuaded to adopt a dependent child *only if* there were a kinship adoption agreement preserving certain rights of the birth parent. In a further subset of these unusual cases, the requirements of emotional detriment in Welfare and Institutions Code section 366.26, subdivision (c)(1)(D), might not be met, rendering guardianship inappropriate, and the child would be placed for adoption with a nonrelative. In those unique circumstances, it is possible the parent's counsel or the social worker might have a duty to explore the possibility of a kinship adoption agreement with the reluctant relative. That case is not before us here, and we do not address the existence or content of any such possible duty. In the present case, Leanne's mother was willing and able to adopt Kimberly. Our holding today is, in essence, that Leanne had no right to impose conditions on the involuntary termination of her parental rights when the placement preferred by statute—adoption by a relative of the dependent child—was the plan for permanency adopted by the juvenile court.

postadoption privileges. Leanne has not been precluded from entering into a kinship adoption agreement because her parental rights have been terminated. Because voluntary or involuntary termination of parental rights is a prerequisite to an enforceable kinship adoption agreement, such termination does not defeat the purposes of Family Code section 8714.7. Further, as previously set forth, parental rights are not terminated if the parent has maintained regular contact and the child would benefit from the relationship. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(A).)

Leanne argues that a kinship adoption agreement was appropriate in this case and was in Kimberly's best interests. Leanne claims that continued contact with Kimberly would benefit Kimberly because it would give her access to her mother's health information, thus enabling an adequate assessment of Kimberly's health risks and appropriate treatments. Another benefit Leanne asserts Kimberly would gain from continued contact is maintaining the emotionally beneficial biological lifeline from parent to child.

Although assuring the free flow of medical information to adopted children from their biological parents and maintaining a biological lifeline to natural parents may be beneficial to a child, it does not appear such benefits were intended to alter the fundamental nature of termination proceedings. There is nothing in the statutes mandating consideration of such benefits at the termination hearing.

Nothing in either the kinship adoption statute or the juvenile dependency statutes requires that birth parents be advised of the availability of kinship adoption agreements. Further, as we have seen above, nothing in the practical unfolding of the usual juvenile dependency proceeding suggests the necessity of a judicially imposed requirement for such an advisement. Finally, the birth parent in a dependency proceeding has no due process right to notice of the kinship adoption statute because the statute creates no rights in the context of a dependency proceeding; rather, the statute merely preserves the option of a kinship adoption agreement *despite* termination of parental rights under Welfare and Institutions Code section 366.26, subdivision (a).[5]

### III.

### *No Ineffective Assistance of Counsel*

Leanne contends her counsel's failure to advise her of the availability of a kinship adoption agreement constitutes ineffective assistance of counsel and

---

[5]See *In re Zachary D.* (1999) 70 Cal.App.4th 1392 [83 Cal.Rptr.2d 407].

requires reversal of the order terminating her parental rights. She further claims that counsel erred in waiving her right to a continuance because such a continuance would have provided her with an opportunity to negotiate the terms of a kinship adoption agreement.

As previously discussed, kinship adoption agreements are of no benefit to a birth parent at a Welfare and Institutions Code section 366.26 hearing. Whether Leanne had entered into a kinship adoption agreement or not would not have altered the order terminating her parental rights. Such an order is based on considerations independent from whether the appropriate parties have entered into a kinship adoption agreement. Ineffectiveness, if any, by her counsel in either waiving time or in not advising her of availability of a kinship adoption agreement, would not have altered the order from which Leanne has appealed.

### DISPOSITION

The judgment is affirmed.

Wiseman, J., and Jones (F. P.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 14, 1999.

---

*Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.