Filed 9/10/14  Marriage of Clow CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of ROBERTA SALA-CLOW AND TRACY CLOW. | |
| ROBERTA SALA-CLOW,<br><br>    Appellant,<br><br>        v.<br><br>ROBIN L. CLOW, Executor, etc.,<br><br>    Respondent. | G048469<br><br>(Super. Ct. No. 10D000511 )<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim R. Hubbard, Judge.  Affirmed.

Tredway, Lumsdaine & Doyle LLP, Daniel R. Gold and Carlos A. Becerra for Appellant.

John L. Dodd & Associates and John L. Dodd; Newman & Newman and DeeAnn R. Newman, for Respondent.

\*        \*        \*

The primary issue in this case is whether the family court erred by entering judgment in a dissolution action on a stipulated settlement agreement after the death of one of the spouses. The parties agreed to the settlement before the husband died but did not submit the agreement to the court for approval until after his death. We conclude the doctrine of judicial estoppel precludes the decedent's spouse from asserting the family court lacked authority to enter judgment on the stipulation. Accordingly, we affirm.

I

FACTS AND PROCEDURAL BACKGROUND

Tracy Clow and Roberta Sala-Clow married in 1991, and separated in late December 2009 or early 2010.[1] In January 2010, Roberta filed an action to dissolve the marriage. Tracy responded in early February 2010.

On June 8, 2012, the trial court filed a stipulation and order for judgment signed by the parties and counsel. The handwritten stipulation resolved property and support issues. The parties signed the stipulation under a statement reflecting they had read and understood the stipulation and agreement, requested the court to make the stipulation and agreement the court's order, and waived further notice of the order. Judge Clay Smith's stamped signature appears next to the statement, "It is so ordered." The stipulation provided, "A stipulation for Judgment does not replace the formal, typed Judgment."

On September 19, 2012, Tracy's attorney DeeAnn Newman requested an order "on behalf of Respondent, Tracy Clow, deceased." Newman asserted in a declaration the parties had resolved all issues in the stipulation at a voluntary settlement conference with a private judge on June 1, 2012. Tracy died in an automobile collision on June 6, 2012. Counsel for both parties jointly filed the stipulated judgment on June 8, 2012. Newman explained both counsel "discussed the situation with . . . Judge Kim

---

[1]     For ease of reference, we will refer to the parties by their first names. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

Hubbard," who "immediately signed and entered the judgment that morning on June 8
. . . ."

Newman sent a formal typed judgment to Roberta's attorney for approval, but received no reply. Newman asserted that Roberta informed public officials, including the coroner's office, that she was Tracy's wife and "claims that she is entitled to all the real and personal property involved in this case, including Tracy's business." Roberta had filed a separate pending civil action for rescission, declaratory and other relief against Robin Clow, Tracy's executor, "to try and undo the Stipulated Judgment entered into on June 1, 2012."

Newman asked the court to sign and enter a typed stipulated judgment per the handwritten stipulation executed on June 1, 2012, and issue a nunc pro tunc order terminating the parties' marital status as of June 1, 2012. She argued the court had inherent and statutory power to enter the status judgment nunc pro tunc to June 1, 2012, "because the judgment could have been signed, dated, filed, and entered as of June 1, 2012," and the delay was not Tracy's fault.

Roberta opposed Newman's request, arguing Tracy's death terminated the marriage by operation of law and therefore the family court lacked jurisdiction to make further orders concerning property rights, support, costs or fees: "[T]he hand-written agreement was *never formalized*, never presented to the court for consideration and was not actually considered by the court prior to the automatic dissolution of the" marriage. She also asserted, "No mistake, neglect or inadvertence caused the judgment to be delayed; rather, despite diligent and normal divorce proceedings, one party died before an agreement was finalized or filed with the court for judgment."

At a hearing on November 30, 2012, the trial court concluded "there would be a miscarriage of justice" if it did not enter the judgment. The court granted the "motion to enter judgment pursuant to the handwritten stipulation . . . , and the motion to

3

enter status judgment nunc pro tunc to June 1st, 2012 . . . ." The court directed Newman to "prepare the formal order."

A file-stamped copy is not in our record, but around January 29, 2013, Roberta moved for a new trial concerning the November 30, 2012 order granting the request for entry of judgment nunc pro tunc. She asserted the court abused its discretion, insufficient evidence supported the judgment, and the court erred as a matter of law at the hearing. (Code Civ. Proc., § 657, subds. (1), (6), (7).) She repeated her earlier claim the family court lacked "subject matter jurisdiction" to "grant[] the request of a third-party former attorney, who lacked standing to bring such a request, to enter a nunc pro tunc order dissolving her former client's *already* dissolved marriage on improper grounds."

Newman opposed the new trial motion, arguing it was premature because the court had not signed the judgment. Concerning standing, Newman asserted the court could have acted on its own motion, a third party may make a motion for entry of a judgment nunc pro tunc, and Roberta did not object to standing earlier in the proceedings.

At a March 15, 2013 hearing, the trial court denied the new trial motion as premature because there was "no judgment entered yet." The court repeated its view the family court had jurisdiction to enter the stipulation after the death of one of the parties, and found Newman had standing or authority to request the nunc pro tunc judgment.

On March 21, 2013, the court signed and filed the dissolution judgment. The judgment declared the parties' marital status terminated on June 1, 2012, and the judgment would be entered nunc pro tunc as of June 1, 2012. The court ordered the property division and other matters as specified in the parties' stipulation, and attached a copy of the stipulation. The clerk mailed notice of entry of judgment on March 22, 2013.

On May 6, 2013, the court signed and filed an order declaring "there would be a miscarriage of justice for husband if the Court was not to finalize the matter, that under Family Code § 2346 the court has the power to dissolve the marriage nunc pro tunc, and that husband is entitled to nunc pro tunc relief under the court's inherent

4

authority. [¶] THEREFORE, IT IS ORDERED THAT the motion of Respondent, Tracy Clow (decedent), to enter the stipulated judgment nunc pro tunc to June 1, 2012, and the motion to enter status judgment nunc pro tunc to June 1, 2012, is hereby granted."

On May 7, the court signed and filed an order denying Roberta's new trial motion, explaining Newman had standing to request entry of judgment nunc pro tunc and the motion for new trial was premature.

On May 21, 2013, Roberta noticed an appeal from the May 6 "judgment or order." (Code Civ. Proc., §§ 904.1, subd. (a)(2) ["order after judgment"]; 904.1, subd. (a)(3)-(13) ["order of judgment"].)

On December 26, 2013, this court granted a motion to substitute Robin Clow, Tracy's executor, as Respondent. (Cal. Rules of Court, rule 8.36; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139.) In January 2014, Robin moved to dismiss the appeal. We elected to resolve the motion with the appeal.

II

DISCUSSION

A. *Appealability*

Robin argues Roberta appealed from the May 6, 2013 order denying her new trial motion rather than the March 21, 2013 judgment, and an order denying a new trial motion is nonappealable. (See *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18, 21 (*Walker* ) [an order denying a motion for new trial is nonappealable, but the reviewing court should construe a notice of appeal to encompass the underlying appealable judgment where it is reasonably clear what appellant was trying to appeal and respondent would not suffer prejudice].) She also argues "because Roberta never appealed the June 8, 2012, judgment, that became final, requiring this appeal also be dismissed on both mootness and nonappealability grounds."

5

Robin is mistaken. As noted above, on May 6 the court filed a written order based on the November 30, 2012 hearing and ruling, granting Newman's request or motion to enter the stipulated judgment nunc pro tunc to June 1, 2012, and the motion to enter status judgment nunc pro tunc to June 1, 2012. The court denied the new trial motion (heard by the court on March 15, 2013) by written order on *May 7*.

The notice of appeal describes the May 6, 2013 order as both an "order after judgment" (Code Civ. Proc., § 904.1, subd. (a)(2)) and "order of judgment" (Code Civ. Proc., § 904.1, subd. (a)(3)-(13)) Robin does not argue an appeal from the March 21, 2013 judgment, notice of which the clerk mailed March 22, is untimely, or that she would suffer prejudice by reviewing the issues raised by Roberta if encompassed within the March 21 judgment. The appeal should not be dismissed for these reasons. (*Walker, supra,* 35 Cal.4th at p. 21.)

Alternatively, Robin argues the stipulated judgment Judge Smith signed on June 8, 2012, constitutes the applicable judgment. Robin contends that the judgment became final 60 days after June 8, and "[b]ecause the order for judgment signed by Judge Smith became final, it is the operative judgment in this case." Robin asserts Roberta's failure to appeal that judgment moots the controversy concerning the nunc pro tunc judgment.

Robin's reliance on Code of Civil Procedure section 904.1, subdivision (a), and *In re Marriage of Fink* (1976) 54 Cal.App.3d 357 (*Fink*) is misplaced. Code of Civil Procedure, section 904.1 provides, "(a) An appeal, other than in a limited civil case, is to the court of appeal. An appeal, other than in a limited civil case, may be taken from any of the following: [¶] (1) From a judgment, except (A) an interlocutory judgment, other than as provided in paragraphs (8), (9), and (11), or (B) a judgment of contempt that is made final and conclusive by Section 1222." *Fink* held a party may appeal under the Family Law Act from a separate interlocutory judgment of dissolution before other issues

6

have been litigated. (*Fink*, *supra*, at p. 366.) Neither section 904.1 nor *Fink* support Robin's argument the June 8 order was an appealable final judgment.

Here, the June 8, 2012 stipulation dealt with property issues and support, but failed to resolve the issue of marital status. Moreover, the stipulation Judge Smith signed states, "A stipulation for Judgment does not replace the formal, typed Judgment." Based on the trial court's express declaration, we conclude there was no appealable judgment until the court signed and filed the formal typed judgment on March 21, 2013. The parties chose to proceed in this manner and therefore it would be unjust to conclude Roberta lost her right to appeal the court's March 21, 2013 nunc pro tunc judgment by failing to appeal the June 8, 2012 order. Moreover, the record shows no one served a notice of entry of judgment of the June 8, 2012 order. Consequently, it would not have been final 60 days after June 8 in any event. We now turn to the merits.

B.    *Roberta Is Judicially Estopped from Asserting the Family Law Court Lacked Authority to Enter Judgment on the Stipulation After Tracy Died*

Roberta contends the death of a party that occurs before the court resolves a marital dissolution action deprives the court of authority to determine the property rights of the litigants. (See *In re Marriage of Allen* (1992) 8 Cal.App.4th 1225, 1229; *In re Marriage of Shayman* (1973) 35 Cal.App.3d 648, 651 ["death of a party to a dissolution proceeding abates the cause of action, as the status of the parties is no longer before the court, and that the court thus loses jurisdiction to make any *further determination* of property rights, alimony, costs or attorneys' fees"]; but see *In re Marriage of Mallory* (1997) 55 Cal.App.4th 1165 [court retains power to enter judgment on matters "submitted" to the court before the death of a party; Fam. Code, § 2346, provides express statutory power to backdate a judgment for marital dissolution]; *In re Marriage of Hilke* (1992) 4 Cal.4th 215, 220 [wife's death did not preclude the trial court from ruling on property issues; death of one of the spouses abates a cause of action for dissolution but does not deprive the court of its retained jurisdiction to determine collateral property

7

rights if the court has previously rendered judgment dissolving the marriage]; Code Civ. Proc., § 669 ["If a party dies after trial and submission of the case to a judge sitting without a jury for decision . . . and before judgment, the court may nevertheless render judgment thereon"].) Roberta asserts that on June 6, 2012, when Tracy died, the marriage dissolved as a matter of law and there was nothing left for the family court to adjudicate. (See *Greene v. Williams* (1970) 9 Cal.App.3d 559, 562.) She states that "[a]lthough a handwritten agreement exists . . . the agreement was *never* finalized and typed-up with finishing language," nor was it submitted to the court before Tracy's death.

Roberta is judicially estopped from asserting the family court lacked authority to enter judgment on the June 1 stipulation. "'"Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies."'" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.) "The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Id.* at pp. 986-987.)

Here, all five factors to invoke judicial estoppel are satisfied. On June 1, Roberta agreed with Tracy to settle the couple's outstanding marital property issues. On June 8, Roberta, through counsel, submitted the stipulation to the family court for approval to enter a final judgment. The court approved the stipulation. Roberta later took the inconsistent position the family court lacked jurisdiction or authority to enter a judgment on the stipulation because Tracy had died a few days earlier. There has been no assertion Roberta's original position to have the court approve the stipulation was the result of ignorance, fraud, or mistake. As noted, Roberta apparently had counsel

8

throughout the proceedings. It is not a "mistake" simply because Roberta changed her mind.

*In re Marriage of Hinman* (1992) 6 Cal.App.4th 711 (*Hinman*) is analogous. There, the wife petitioned to dissolve the marriage listing five minor children of the marriage. Although the two oldest children were fathered by the wife's former husband, the wife's petition requested that she and her husband share joint legal custody of all five children. The case settled during trial and the parties stipulated the couple would share joint physical and legal custody of the five children, who would continue to reside in the family home with the husband. The wife was present with her attorney and on the record expressly agreed to the settlement terms. A final judgment was entered providing for joint custody. About two months later, the wife moved to strip husband of custody over the two older children, arguing the court lacked jurisdiction to award custody of the older children to the husband because he was not the natural father. The trial court ruled it had jurisdiction to enter the original judgment awarding husband joint custody of the older children. The wife argued on appeal the family court acted in excess of its jurisdiction in allowing the husband to share custody of the older children because he was not the biological father.

The appellate court held the family court had subject matter jurisdiction to enter the order because the wife listed the children of the marriage in her petition and did not object to the nonparent husband's attempt to obtain custody or visitation rights. The court explained her allegations conferred "'subject matter jurisdiction upon the court to determine custody, a jurisdiction which does not vanish even if later it is shown there are no such children. [Citations.] [¶] Having initially invoked the court's power to determine custody, [wife] then *stipulated to a judgment* giving [husband] joint custody. A party who participates in or consents to a judgment which otherwise would be beyond the court's authority is precluded from attacking it collaterally, absent exceptional circumstances. [Citations.]" (*Hinman, supra*, 6 Cal.App.4th at p. 716.)

9

*Hinman* acknowledged a party cannot confer jurisdiction by consent, but explained the court did not lack jurisdiction in a fundamental or strict sense (absence of authority over the subject matter or parties) because jurisdiction of the cause attached at the time the action commenced and is evaluated based on the allegations of the petition. "As long as all parties affected are actually or constructively before the court, the jurisdictional facts determined by it cannot be attacked in a collateral proceeding. [Citations.]" (*Hinman*, *supra*, 6 Cal.App.4th at pp. 717-718.) Thus, "while the court's award of joint custody to [husband] may have been beyond its statutory authority, the court did not lack jurisdiction in the fundamental sense. [Citation.] Under principles of estoppel and waiver, [wife's] designation of [the children] as children of the marriage in her petition and her subsequent stipulation awarding Howard primary physical custody precludes her from later challenging the order on jurisdictional grounds." (*Hinman*, *supra*, 6 Cal.App.4th at p. 718.)

In *Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, the California Supreme Court relied on *Hinman* in concluding the estoppel doctrine prevented a party to a stipulated judgment of paternity from challenging its validity. In *Kristine H.*, lesbian partners Kristine and Lisa jointly filed a complaint to declare the existence of parental rights, alleging that Kristine was seven months pregnant and Lisa was her partner. They requested a stipulated judgment declaring them the "'joint intended legal parents' of the unborn child with Kristine being listed on the birth certificate 'as mother' and Lisa being listed 'in the space provided for "father."'" (*Id.* at p. 161.) The judgment was entered and the child was born four weeks later.

Two years later, Kristine filed a motion to set aside the stipulated judgment, arguing it exceeded the trial court's jurisdiction because the child had not been born when the court entered the judgment. The Supreme Court invoked the doctrine of estoppel to prevent Kristine from challenging the judgment. The court would not entertain Kristine's

10

attack "the judgment she sought and to which she stipulated would ""'trifle with the courts.'"" (Citation.)" (*Id.* at p. 166.)

Here, the family court had jurisdiction over the parties and the marital dispute at the inception of the case. Roberta's counsel presented the parties' agreement to the court with full knowledge of Tracy's death. Roberta's decision to submit the agreement for court approval acceded to the court's power to enter judgment. Because Roberta, through counsel, agreed to the entry of the order, she is judicially estopped from challenging the validity of a judgment she sought. As the Supreme Court observed in *Kristine H.*, "[e]stoppel has long been utilized to prevent a party from contesting the validity of a judgment that was procured by that party." (*Id.* at p. 162.) Because Roberta may not now challenge the validity of the judgment, we need not determine whether the stipulated judgment is valid. (*Ibid.*)

III

DISPOSITION

The judgment is affirmed. Respondent is entitled to costs.


ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

11