Filed 11/27/24  Hubbard v. Garcia CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DONA HUBBARD, | C099360 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CV-URP-2021-004590) |
| v. | |
| JOAQUIN MARCELLO GARCIA, | |
| Defendant and Appellant. | |

SUMMARY OF THE APPEAL

In 2015, Joaquin Garcia and Dona Hubbard (previously Dona Garcia) dissolved their marriage.  Because we refer to Joaquin's mother in this decision, and Dona and Joaquin at one point shared a last name, to prevent confusion we will refer to Joaquin and Dona by their first names.

Pursuant to their marital settlement agreement (MSA), in 2012 Dona transferred her interest in community real property to Joaquin, and, therefore, no real property needed to be addressed by the court in the dissolution proceedings.  The judgment that dissolved the marriage (the Dissolution Judgment) ordered a division of property according to the terms of the MSA.

1

A little over two years after the parties' marriage was dissolved, the parties executed a grant deed transferring Joaquin's interest in real property to Joaquin and Dona as joint tenants. In 2021, Dona filed this action seeking to partition the property. Joaquin filed an answer and a cross-complaint, in which he did not assert the civil division of the trial court lacked jurisdiction to hear this action.

After a bench trial, the trial court entered a judgment finding each party owned a fifty percent (50%) interest in the property and ordered the property to be partitioned by sale. The trial court thereafter denied Joaquin's motion for a new trial. This court dismissed Joaquin's appeal of the judgment because it was untimely.

In March 2023, more than nine months after the judgment was entered and seven months after the motion for new trial was denied, Joaquin brought a motion to set aside the judgment, citing Code of Civil Procedure, section 473, subdivision (d), as the statutory authority in support of the motion. (Unless otherwise stated, statutory section citations that follow are found in the Code of Civil Procedure.)

Section 473, subdivision (d), allows courts to set aside void judgments. In his motion to set aside the judgment, Joaquin argued for the first time, as he does here, that the issues raised by his motion were within the jurisdiction of the family court, and that the civil department of the trial court lacked subject matter jurisdiction to consider his motion.

The trial court disagreed and so do we. We affirm the denial of the motion to set aside.

## FACTS AND HISTORY OF THE PROCEEDINGS

### The Parties Marriage and Dissolution

Joaquin and Dona married in March 2009. During their marriage, they had three children.

In September 2010, Robin Garcia, Joaquin's mother, transferred real property (the subject property) to Joaquin and Dona as joint tenants.

In 2012, Joaquin and Dona executed and recorded a grant deed transferring all right, title, and interest in the subject property to Joaquin.

Joaquin and Dona separated in October 2014. The San Joaquin Superior Court, Stockton Family Law Court, entered the Dissolution Judgment on March 30, 2015, which dissolved Joaquin and Dona's marriage on June 5, 2015, in San Joaquin Superior Court Case No. FL385846 (the Family Law Action).

According to the section of the MSA governing real property, "[t]he parties acknowledge and confirm that on November 12, 2012 [*sic*], Wife signed a Grant Deed transferring her interest in the community property[, the subject property,] . . . to Husband. This Grant Deed was recorded with the San Joaquin County Recorder's Office on February 27, 2012 . . . . Therefore, there is no real property that needs to be divided between the parties or by this Court."

According to the MSA, each party "desire[s] to . . . [¶] [r]elinquish any and all part [*sic*], present, or future claims that each may have against the property or estate of the other party and his or her executors, administrators, representatives, successors, and assigns, except as otherwise specifically provided within the provisions of this agreement." It also states, "[e]ach party, except as otherwise provided for in this Agreement, releases the other from all claims, liabilities, debts, obligations, actions, and causes of action of every kind that have been or will be incurred. However, neither party is relieved nor discharged from any obligation under this Agreement except as so indicated."

The MSA also states, "[i]f there should be a reconciliation of the parties after the date of execution of this Agreement, this Agreement shall nevertheless continue in full force until it is modified or abrogated by another written instrument to that effect signed by each of the parties hereto."

3

The Dissolution Judgment reserves jurisdiction "to make other orders necessary to carry out [the] judgment."

Post-Dissolution Property Transfer and Action to Partition

In 2017, the parties executed a grant deed in which Joaquin transferred his interest in the subject property to himself and Dona as joint tenants.

In May 2021 Dona filed this civil action against Joaquin and other persons occupying the subject property seeking partition, ouster, accounting for rents, a constructive trust, and ejectment. She asked the court to partition the property by sale and to appoint a receiver to accomplish the same.

Joaquin filed an answer in November 2021. As an affirmative defense, Joaquin stated, "[Dona]'s claims, and all of them, are barred by judgment entered in the parties' dissolution of marriage action and by the settlement agreement which [Dona] executed in that matter."

When he filed his answer, Joaquin also filed a cross-complaint seeking recission of the 2017 grant deed and quiet title to the subject property. The cross-complaint presented a theory that Dona had convinced Joaquin to execute the 2017 grant deed when she knew he was under the influence of drugs and alcohol, and by representing to him that the "sole effect of the Grant Deed was to provide for the future of" their children.

The cross-complaint alleged that Joaquin's mother had transferred the subject property to him and Dona while they were married and living together in 2010. It also alleged that the parties executed a grant deed transferring the property to Joaquin in 2012, and that in the 2015 MSA the parties confirmed "that the execution of the" 2012 grant deed "was complete, final and binding and that [Dona] held no interest whatsoever in the subject property." Dona's answer to the cross-complaint admitted these two allegations.

Following a three-day bench trial, the court ultimately entered an amended interlocutory judgment finding each party owned an undivided fifty percent (50%)

4

interest in the subject property, and ordering partition by sale of the subject property, appointment of a receiver to sell the property, and judgment of possession of the subject property by the receiver (the Partition Judgment). The Partition Judgment was dated and filed nunc pro tunc on June 7, 2022.

We do not have a transcript of the trial testimony. But we do have the transcript of the parties' arguments regarding a tentative ruling that proposed to enter judgment in Dona's favor.

In arguing against a judgment in Dona's favor, Joaquin's counsel asked the court to consider the totality of the circumstances, claiming that given the circumstances, it was "difficult to understand" why Joaquin would "sign this grant deed knowingly." As part of this argument, counsel claimed Dona, "would have us believe that there was some short period of reconciliation which resulted in" the 2017 transfer of the subject property. Counsel argued that position was "not credible." Counsel stated Joaquin had testified that he signed the deed because he wanted his children to be able to have the property in case of his death, and he did not understand the actual effect of signing the deed when he signed it.

Joaquin's counsel also argued that the MSA disposed of the issues in this case. Counsel noted the MSA states Dona had no interest in the subject property, and provided that if the parties reconciled the MSA would remain in full force and effect absent a writing signed by both parties. Counsel represented that Dona had said the 2017 grant deed was the result of a momentary reconciliation between Dona and Joaquin. Counsel then argued that the parties had failed to create a document specifically amending the MSA to allow for the 2017 transfer of the subject party during the period of their purported reconciliation.

In response, when arguing about the totality of the circumstances, Dona's lawyer noted Joaquin has never paid child support or spousal support to Dona, which provided a possible explanation for why he would decide to give Dona an interest in the subject

5

property. With respect to the potential impact of the MSA, Dona's counsel argued (1) that there was no need to look at the MSA to resolve this case because the 2017 deed was a valid transfer of title; (2) that Dona had signed the 2012 deed and MSA under threat and to get a clean break from Joaquin; and (3) that the 2017 deed is a written instrument.

When the trial court explained its reasoning for entering judgment for Dona, it noted it was possible Joaquin had signed the deed because he had never paid any spousal or child support—i.e., that there was a plausible reason for him to make the subject transfer other than being duped by Dona while under the influence of drugs and alcohol.

On June 23, 2022, Joaquin filed a motion for a new trial. The trial court denied the motion.

On January 5, 2023, Joaquin filed a notice of appeal of the Partition Judgment. This court dismissed the appeal as untimely on February 16, 2023.

Motion to Set Aside Partition Judgment

On March 24, 2023, in response to a February 23, 2023, notice of related cases filed by Joaquin, the trial court issued an order that this action and the Family Law Action were not related.

Also on March 24, 2023, Joaquin filed a motion to set aside the Partition Judgment. The motion stated it was based on the grounds that "the trial court in this matter lacked subject matter jurisdiction over the claims . . . because the Family Law Division of the San Joaquin County Superior Court had previously obtained jurisdiction over the issue of ownership of the subject property by the parties, including the following issues which were raised by the pleadings in this case:" (1) the effect of the Dissolution Judgment on the rights of the parties with respect to the subject property and on the grant deed executed on September 11, 2017; (2) the interpretation of the MSA; and (3) the effect of the MSA on the rights and duties of the parties with respect to the subject property and upon the grant deed signed on September 11, 2017.

6

In his memorandum of points and authorities in support of the motion to set aside the Partition Judgment, Joaquin cited section 473, subdivision (d), which provides a "court may . . . on motion of either party after notice to the other party, set aside any void judgment or order."

On June 30, 2023, the trial court denied the motion to set aside the Partition Judgment. The trial court found "there is no legitimate basis or good cause for the Court to set aside the [Partition Judgment] in this action. The case was properly brought as a civil action based on the causes of action alleged and the relief prayed for therein." The court concluded the Family Law Division of the court did not have exclusive—or any—jurisdiction over this action. The trial court noted that Joaquin's answer and cross-complaint in this action did not mention the civil court lacked jurisdiction. Furthermore, it observed Joaquin did not argue in his motion for a new trial that the Partition Judgment was void. The trial court explained, Joaquin, "never contested the jurisdiction of this Court, never objected to the case being litigated here, nor did he challenge the propriety of the case being handled in this Civil Department before now; nearly a year after the conclusion of the court trial. This is just another attempt by [Joaquin] to relitigate the same issues which have already been decided, and to delay the enforcement of the interlocutory judgment. [¶] And finally, without question, [Joaquin] has forfeited any argument of lack of jurisdiction of the Court, by not only not bringing it in a timely fashion, but by voluntarily and fully participating in the litigation in this action. Only upon an adverse judgment does [Joaquin] now, belatedly, complain."

Defendant filed a notice of appeal of the denial of his motion to set aside the Partition Judgment on August 29, 2023.

7

I

*Section 473, Subdivision (d), and Standard of Review*

Under section 473, subdivision (d), "[t]he court may, upon motion of the injured party, or its own motion, . . . set aside any void judgment or order." The statute "allows a court to set aside a void judgment without any mention of a time limit." (*Lee v. An* (2008) 168 Cal.App.4th 558, 563 (*Lee*).) However, if the judgment at issue is not void, a trial court has no power to set it aside under section 473, subdivision (d). (See *Lee*, at p. 563; *Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822.) "Evaluating an order or judgment as void is a question of law, reviewed de novo." (*Nixon Peabody*, *supra*, at p. 822.)

II

*The Partition Judgment is Not Void*

Joaquin argues the trial court lacked subject matter jurisdiction to decide what he claims were family law issues in this matter, and, thus, we should set aside the trial court's order denying his motion to set aside the Partition Judgment.

A. <u>Extent</u> <u>of</u> <u>Family</u> <u>Law</u> <u>Issues</u>

As a preliminary matter, Joaquin's efforts to characterize this action as raising issues best resolved under the continuing jurisdiction of the family law department are unpersuasive. To the extent the Dissolution Judgment reserved jurisdiction it was to "make other orders necessary to carry out [the] judgment." To the extent jurisdiction to divide property is retained in dissolution actions after a judgment of dissolution is entered in "a proceeding for dissolution of marriage . . . the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties *that have not*

*been previously adjudicated by a judgment in the proceeding*." (Fam. Code, § 2556, italics added.)

The Dissolution Judgment and the MSA were entered in 2015. The MSA specifically states there was "no real property" to be divided by the trial court and confirms that at the time of the dissolution proceedings, the parties had already transferred all interest in the subject property to Joaquin. That is, the 2015 Judgment contemplated the existence of the subject property and confirmed it was Joaquin's separate property as of 2015. It did not leave unadjudicated the status of the subject property or some item of the community estate that Dona sought to have divided through this action. (Fam. Code, §§ 63 [" 'Community estate' includes . . . community property"]; 760 ["Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property"]; 850 & 851 [allowing persons to transmute community property to the separate property by written agreement].)

Based on the record before us, in this action, Dona did not dispute that the MSA confirmed the 2012 transfer of the property was complete, final, and binding, and that she held no interest in the subject property at the time the MSA was entered. Thus, there is no dispute between the parties that the subject property was Joaquin's separate property at the time they dissolved their marriage, and that the Dissolution Judgment and MSA confirmed that the property remained his separate property once the marriage was dissolved. Put differently, with this action, Dona did not challenge or question Joaquin's separate property ownership of the property as of June 2015.

Rather, Dona claims that after the parties were divorced, Joaquin elected to convert his separate property to a joint tenancy in which she would be the joint tenant on the property. This action stems from that transfer between unmarried parties who were not accumulating community assets. (See Fam. Code, § 760.) The 2017 transfer did not require the trial court to make orders necessary to carry out the 2015 judgment. With this

9

action, Dona did not ask the court to "award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding." (Fam. Code, § 2556.)

Joaquin argues this action raises four issues that the family law division "must try." First, he argues the family law division needed to interpret the language of the MSA in which Dona released all present and future rights in the assets of the two parties, including the subject property. This effort to characterize this release as potentially applicable to an action by Dona to enforce an agreement the parties reached as unmarried persons is simply wrong.

In signing the release, Dona did not forever relinquish the ability to enforce future promises Joaquin might make to her. We will not find the family law division had jurisdiction—let alone exclusive jurisdiction—to hear this action simply because Joaquin injected an issue into the proceedings that required the civil division to reject a plainly unreasonable interpretation to the MSA release language. (See Civ. Code, §§ 1638 ["The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"]; 1643 ["A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"]; *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 ["Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally"].)

Second, Joaquin claims the family law division must try the issue regarding the interpretation of language in the MSA in which the parties agreed its terms would remain in effect unless an actual reconciliation occurred.

Third, Joaquin claims the family law division needed to determine whether a reconciliation occurred as the term reconciliation "has been interpreted in Family Law cases."

10

Fourth, he argues that if a reconciliation did occur, the family law division needed to determine if the parties executed an agreement to modify the MSA.

Joaquin's efforts to insert a family law issue where none exists becomes apparent when one takes a closer look at the MSA.

As Joaquin has framed the issues, beginning with his second issue, he implies that, according to the MSA, the only way the parties might change the terms of the MSA would be through reconciliation. A more accurate interpretation of the MSA is that it was designed to govern what would happen if the parties reconciled—or if one of the parties claimed they reconciled and used that to claim certain property was community property without producing a valid writing.

But this action did not depend on claims by Dona that she gained an interest in the property by virtue of a reconciliation between Dona and Joaquin. The interest she claims stems from a deed she claims was validly executed. Whether the parties ever actually reconciled does not matter. And Dona is not challenging the validity of the Dissolution Judgment or the MSA, or that those documents confirmed the subject property was Joaquin's separate property when the parties divorced in 2015.

## B.  Nature of Trial Court Jurisdiction in Family Law Matters

Even if we were to agree with Joaquin and conclude that this action required the trial court to entertain tangential questions regarding family law, that still does not render the civil department's judgment in this action void for want of subject matter jurisdiction.

" 'A trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void . . . .' (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495–496 [].)" (*Lee*, *supra*, 168 Cal.App.4th at p. 563.)  Thus, when a judgment is voidable, but not void, it is not subject to being set aside under section 473, subdivision (d). (*Lee*, at p. 563.)

11

"The distinction between void and voidable orders is frequently framed in terms of the court's jurisdiction. 'Essentially, jurisdictional errors are of two types. "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*[Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [].].) When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and "thus vulnerable to direct or collateral attack at any time." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 119 [] . . . .)' (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 [].) For example, if a defendant is not validly served with a summons and complaint, the court lacks personal jurisdiction and a default judgment in such action is subject to being set aside as void. (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 [].) [¶] But when a statute authorizes a prescribed procedure and the court acts contrary to the authority conferred, the court exceeds its jurisdiction. (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 661.) 'Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal . . . ,' and generally are not subject to collateral attack once the judgment is final in the absence of unusual circumstances which prevented an earlier, more appropriate attack. (*Ibid.*)" (*Lee*, *supra*, 168 Cal.App.4th at pp. 563-564, fn. omitted; see also *In re Marriage of Hinman* (1992) 6 Cal.App.4th 711, 716-717 [regarding the distinction between fundamental jurisdiction and acts in excess of jurisdiction].)

Our Supreme Court has recognized that " 'family court' refers to the activities of one or more superior court judicial officers who handle litigation arising under the Family Code. It is not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties. (See Edwards, The Relationship of Family and Juvenile Courts in Child Abuse Cases (1987) 27 Santa Clara L.Rev. 201, 202, fn. 3 . . . .)" (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)

12

Thus, to the extent family law courts retain jurisdictional authority over the division of community property and other issues of family law and to interpret and enforce judgments entered by family law departments, it is a form of "priority of jurisdiction" over an assigned case with respect to other departments of the superior court. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1450 (*Glade*); see also *Wozniak v. Lucutz* (2022) 102 Cal.App.4th 1031, 1040-1041 [explaining the principle of priority of jurisdiction].) Objections based on one department having a priority of jurisdiction over another department hearing a matter are objections based on acts in excess of jurisdiction, and not objections based on a lack of fundamental jurisdiction. (Cf. *Wozniak*, at p. 1041 [finding an objection based on priority of jurisdiction could be forfeited because it was a type regarding an act in excess of jurisdiction].)

As such, judgments entered in civil departments even when family law departments may have priority of jurisdiction are perhaps entered in excess of the civil departments' jurisdiction, but are not entered by a court without fundamental jurisdiction. Such judgments are voidable but not void. Moreover, an objection to a civil department hearing a matter over which a family law department has priority of jurisdiction is subject to forfeiture if not timely raised.

In short, even if the family law division ought to have heard the instant action under principles of priority of jurisdiction, Joaquin forfeited the ability to assert that jurisdiction by failing to raise his jurisdictional arguments until after the judgment became final and this court dismissed his appeal. The cases Joaquin has cited to try to convince us otherwise are inapposite. (See, e.g., *Neal v. Superior Court* (2001) 90 Cal.App.4th 22, 25 [petitioner filed a petition for writ in the court of appeal after the civil division of a trial court denied a demurrer she filed arguing the family law court had jurisdiction in an already pending matter]; *Glade*, *supra*, 38 Cal.App.4th at pp. 1445-1447 [defendant appealed entry of a summary judgment entered in a foreclosure action on the community property residence brought by her estranged husband's father;

13

defendant had made efforts to stay the foreclosure action]; *Askew v. Askew* (1994) 22 Cal.App.4th 942, 948 [appellant had demurred to a civil suit and sought to have it consolidated with a pending family law proceeding; she also timely filed an appeal and raised the issue of the proper department on appeal]; *In re Marriage of Schenck* (1991) 228 Cal.App.3d 1474, 1476-1477 [family law department entered a deferred sale of home order and expressly reserved jurisdiction over ultimate valuation and disposition; the civil law and motion department denied wife's application for a sale of the husband's interest after she secured a writ of execution due to support arrears and suggested she bring the matter in family law; she appealed]; *Barnick v. Longs Drugs Stores* (1988) 203 Cal.App.3d 377, 378-379 [jurisdiction was raised before final judgment in a motion for summary judgment, and dealt with federal preemption questions].)

## DISPOSITION

We affirm the judgment.  Dona shall recover her costs on appeal under California Rules of Court, rule 8.278(a).


_____
HULL, Acting P. J.


We concur:


_____
DUARTE, J.


_____
KRAUSE, J.